UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA COURT

| | | |
|---|---|---|
| Old Dominion Electric Cooperative<br><br>Petitioner,<br><br>vs.<br><br>Federal Energy Regulatory Commission,<br><br>Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 16-1111 |

REPLY OF
THE INDEPENDENT MARKET MONITOR FOR PJM

Pursuant to Section 27(a)(4) of the Federal Rules of Appellate Procedure and the Circuit Rules of this Court, Monitoring Analytics, LLC, acting in its capacity as the Independent Market Monitor for PJM[1] ("Market Monitor"), submits this reply to the response filed on May 20, 2016, by Old Dominion Electric Cooperative ("ODEC") opposing the Market Monitor's motion to intervene in this proceeding.

ODEC asserts (at 2) that the Market Monitor has not demonstrated standing because it has not made "a showing of injury-in-fact." ODEC argues (at 2–3) that allowing the Market Monitor to intervene would set a standard that

---

[1] PJM Interconnection, L.L.C. ("PJM") is a Regional Transmission Organization approved by the Federal Energy Regulatory Commission ("FERC").

would allow intervention by "any organization or individual with only a philosophical identification with a defendant—or a concern with a possible unfavorable precedent." ODEC mispresents the nature of the Market Monitor's interest in the case. ODEC's interpretation of "injury-in-fact" is unduly narrow.

ODEC invents and applies (at 4) a monetary loss requirement for determinations on standing. There is no such requirement.[2] The standard is "concrete and particularized" and "actual or imminent."[3] ODEC seeks waiver of particular rules that ensure proper risk assignment in PJM markets. The Market Monitor has a concrete and particular interest in well functioning markets in PJM. If granted, ODEC's petition could harm the performance of PJM markets. Accordingly, the Market Monitor satisfies the applicable criteria.

The Market Monitor's concerns about ODEC's petition are more than "philosophical." The Market Monitor's purpose is to protect and promote competitive markets. ODEC's petition conflicts with those objectives. ODEC's

---

[2]  *See*, *e.g.*, *Sierra Club v. Jewell*, 764 F.3d 1, 5 (D.C. Cir. 2014) ("The Supreme Court has recognized that harm to "the mere esthetic interests of the plaintiff . . . will suffice" to establish a concrete and particularized injury. *Summers v. Earth Island Inst*., 555 U.S. 488, 494, 129 S. Ct. 1142, 173 L. Ed. 2d 1 (2009). In *Lujan*, for instance, the Court explained that, "[o]f course, the desire to use or observe an animal species, even for purely esthetic purposes, is undeniably a cognizable interest for purpose of standing." 504 U.S. at 562-63. This court has similarly understood that "injury in fact can be found when a defendant adversely affects a plaintiff's enjoyment of flora or fauna." *Am. Soc'y for Prevention of Cruelty to Animals v. Ringling Bros. & Barnum & Bailey Circus*, 317 F.3d 334, 337, 354 U.S. App. D.C. 432 (D.C. Cir. 2003). We explained that a person "may derive great pleasure from visiting a certain river; the pleasure may be described as an emotional attachment stemming from the river's pristine beauty." *Id*. at 337-38 (citing *Laidlaw*, 528 U.S. at 182-83); *see Animal Legal Def. Fund, Inc. v. Glickman*, 154 F.3d 426, 431, 332 U.S. App. D.C. 104 (D.C. Cir. 1998) (en banc) (relying on "aesthetic interest in observing animals living under humane conditions").

[3]  ODEC at 2, citing *Deutsche Bank Nat'l Trust Co. v. FDIC*, 717 F.3d 189, 193 (D.C. Cir. 2013).

continued pursuit of its petition after denial by the FERC implicates concrete, particular and actual concerns affecting market monitoring. For this reason, the Market Monitor was not a peripheral party to the FERC proceeding under review. The Market Monitor was at the center of the opposition to ODEC's request.[4]

ODEC's assertion that "concern about issues that might have important and direct implications for a party's areas of responsibility does not rise to the level of a legally protected interest" is unsupported. Courts routinely permit public interest organizations to become party to cases, recognizing that outcomes that damage an organization's public interest mission confer standing.[5] The Market Monitor protects the market participants' interest in PJM's efficient and competitive markets, and the issues in this case directly affect those interests.

ODEC also argues that granting the Market Monitor's motion to intervene would allow "any organization or individual with only a philosophical

---

[4] In the FERC proceeding, ODEC singled out the Market Monitor in its only answer to comments opposing its petition for waiver. Answer of Old Dominion Electric Cooperative to Motion of the Independent Market Monitor for PJM for Leave to Answer and Motion for Leave to Respond, FERC Docket No. ER14-2242-000 (August 18, 2014).

[5] *See*, *e.g.*, *Carstens v. NRC*, 742 F.2d 1546, 1548 (D.C. Cir. 1984); *National Wildlife Federation v. U.S.*, 626 F.2d 917, 918 (D.C. Cir. 1980); *NAACP v. FPC*, 520 F.2d 432, 433 (D.C. Cir. 1975); *Illinois Citizens Committee for Broadcasting v. FCC*, 515 F.2d 397, 402 (D.C. Cir. 1974) ("We uphold Petitioners' standing to vindicate the public's interest. That interest is underscored by the likelihood that the licensee who is directly governed by the order in the forfeiture proceeding will, as here, find the burden too great, in terms of its own interest, to warrant its undertaking the risk and expense involved in contesting the Commission's action.[footnote omitted] In comparable situations we have allowed interested parties to intervene where the party that would ordinarily be expected to press the public interest has failed to appeal an initial decision. *E.g.*, *Smuck v. Hobson*, 132 U.S.App.D.C. 372, 408 F.2d 175 (1969); *Wolpe v. Poretsky*, 79 U.S.App.D.C. 141, 144 F.2d 505, *cert. denied*, 323 U.S. 777, 89 L. Ed. 621, 65 S. Ct. 190 (1944).").

identification with a defendant … to attempt to intervene." The Market Monitor has exclusive responsibility to monitor the PJM markets; it is the only organization legally charged to "objectively monitor, investigate, evaluate and report on the PJM Markets."[6] Granting intervention to the Market Monitor for the reasons it provides does not open the door to a single additional entity.

ODEC's argument on standing, on the other hand, is unbounded. If accepted, its argument would exclude entities that should be party to this proceeding. PJM Interconnection, L.L.C. has motioned to intervene in this case, but PJM could not pass any reasonable test for standing that the Market Monitor would fail.[7] The Market Monitor seeks to protect the public interest (e.g. market participants' interests) in the efficiency and competitiveness of PJM markets. PJM does not, for example, meet ODEC's unreasonable and misstated standard for showing injury-in-fact.[8]

---

[6] PJM Open Access Transmission Tariff Attachment M § I.

[7] *Cf. Barnes v. Kline*, 759 F.2d 21, 67 n.1 (D.C. Cir. 1984) ("The Executive Branch conceded at oral argument that the Senate has standing to sue in this suit. Similarly, … , the Executive Branch conceded that either House of Congress would have standing to sue based on injury to its lawmaking powers. … No reason appears why the Executive should oppose standing for individual legislators but concede as to a House. The constitutional problems would seem to be identical.").

[8] *See* Motion for Leave to Intervene of PJM Interconnection, L.L.C., Case No. 16-1111 (May 10, 2016) at 2 ("The FERC proceeding below concerned ODEC's petition for waiver of certain provisions of the PJM Open Access Transmission Tariff and Amended and Restated Operating Agreement of PJM Interconnection, L.L.C. to recover from *PJM market participants* costs associated with the provision of electric energy during the cold weather events of January 2014. Consequently, PJM has a direct and substantial interest in the Court's review of those orders…" [emphasis added].).

Duke Energy Corporation et al. ("Duke et al.") have also motioned to intervene in this case. Unlike PJM, Duke et al. do have a direct pecuniary interest in this proceeding. As market participants they would contribute to uplift payments to ODEC if ODEC prevails. However, Duke et al. moves to intervene in support of ODEC because Duke et al. "raised similar waiver arguments related to the January 2014 cold weather events in a separate FERC proceeding."[9] This rationale does not meet ODEC's misstated standard.

Whether a party has standing is a matter of law that should not turn on whether the Appellant likes a party's position. ODEC should not be permitted to select who among comparably situated parties may become party to Court proceedings.

ODEC claims (at 5) that "the IMM has not staked out a positon that differs in any way from the challenged FERC orders." ODEC misrepresents the record of the FERC proceeding. The Market Monitor generally agrees with FERC's result,[10] but it argued against ODEC's petition based on a different rationale.

Although the FERC summarized the arguments raised by the Market Monitor (at PP 24–30), the FERC did not explicitly base its decision on the Market Monitor's arguments about the harmful impact on the competitiveness of PJM markets and the appropriate assignment of fuel procurement risk. The FERC

---

[9] Motion for Leave to Intervene of Duke Energy Corporation, Dynegy Commercial Asset Management, LLC – F/K/A Duke Energy Commercial Asset Management, LLC, and Dynegy Lee II, LLC – F/K/A Duke Energy Lee II, LLC, Case No. 16-1111 (May 11, 2016) at 2.

[10] *ODEC*, 151 FERC ¶ 61,207 (June 9, 2015) ("June 9th Order").

denied the waiver because it requested "impermissible retroactive relief."[11] The Market Monitor supported, under its theory of the case, specific relief to ODEC on one issue that the Commission denied because such relief was also "impermissible retroactive relief."[12]

The Market Monitor does not have interests, perspectives and views on the issues in this proceeding identical to the FERC. The Market Monitor shares with FERC an interest in protecting competition policy, but the FERC is a governmental and political entity with diverse responsibilities. The Market Monitor is tightly focused on protecting and promoting competitive markets in PJM, one among several different organized wholesale markets. The Market Monitor should have the opportunity to protect its distinct interests in this proceeding.

---

[11]    June 9th Order at P 47.

[12]    *Id*. at PP 47–48.

## CONCLUSION

The Market Monitor respectfully requests that the Court grant its motion to intervene.

Respectfully submitted,

*[signature]*

Jeffrey W. Mayes
General Counsel
Monitoring Analytics, LLC
2621 Van Buren Avenue, Suite 160
Valley Forge Corporate Center
Eagleville, Pennsylvania 19403
(610) 271-8053
*jeffrey.mayes@monitoringanalytics.com*

## CERTIFICATE OF SERVICE

In accordance with Fed. R. App. P. 25(d), I hereby certify that I have this 27th day of May, 2016, caused the foregoing document to be served on all parties or their counsel of record through the CM/ECF system:

Adrienne E. Clair
Thompson Coburn LLP
1909 K Street, N.W. Suite 600
Washington, D.C. 20006-1167
*aclair@thompsoncoburn.com*

Dennis Lane
Stinson Leonard Street LLP
1775 Pennsylvania Avenue, NW
Suite 800
Washington, D.C. 2006
*dennis.lane@stinson.com*

Paul M. Flynn
Ryan James Collins
Wright & Talisman, PC
1200 G Street, NW
Suite 600
Washington, DC 20005-1200
*flynn@wrightlaw.com*
*collins@wrightlaw.com*

Noel Harlan Symons
Matthew Allen Fitzgerald
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
*nsymons@mcguirewoods.com*
*mfitzgerald@mcguirewoods.com*

Robert Harris Solomon
Beth Guralnick Pacella
Federal Energy Regulatory Commission
(FERC) Office of the Solicitor
Room 9A-01
888 First Street, NE
Washington, DC 20426
*robert.solomon@ferc.gov*
*beth.pacella@ferc.gov*

_____
Jeffrey W. Mayes
General Counsel
Monitoring Analytics, LLC

# Attachment