# IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| Old Dominion Electric Cooperative ) | |
| ) | |
| v.   ) | No. 16-1111 |
| ) | |
| Federal Energy Regulatory Commission ) | |

ORIGINAL

## PETITION FOR REVIEW

Pursuant to Section 313(b) of the Federal Power Act, 16 U.S.C. § 825*l*(b) and Rule 15 of the Federal Rules of Appellate Procedure, Old Dominion Electric Cooperative hereby petitions this Court for review of the following orders issued by the Federal Energy Regulatory Commission:

   1.   *Old Dominion Elec. Coop.*, Order Denying Rehearing, 154 FERC ¶ 61,155 (March 1, 2016); and

   2.   *Old Dominion Elec. Coop.,* Order Denying Petition for Waiver, 151 FERC ¶ 61,207 (June 9, 2015).

A copy of the orders are attached hereto as Exhibit A.

Respectfully submitted,

*Adrienne S. Clair*

Adrienne E. Clair
Dennis Lane
Stinson Leonard Street LLP
1775 Pennsylvania Avenue, NW, Suite 800
Washington, D.C. 20006

1

(202) 785-9100
(202) 785-9163 (fax)
adrienne.clair@stinson.com
dennis.lane@stinson.com

*Counsel for Old Dominion Electric Cooperative*

USCA Case #16-1111     Document #1608250     Filed: 04/11/2016     Page 2 of 51

USCA Case #16-1111    Document #1608250    Filed: 04/11/2016    Page 3 of 51

# EXHIBIT A

Page 4 of 51

Filed: 04/11/2016     Document #1608250     USCA Case #16-1111

154 FERC ¶ 61,155
UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Before Commissioners: Norman C. Bay, Chairman;
Cheryl A. LaFleur, Tony Clark,
and Colette D. Honorable.

| | |
|---|---|
| Old Dominion Electric Cooperative | Docket No. ER14-2242-001 |

ORDER DENYING REHEARING

(Issued March 1, 2016)

1.     On June 23, 2014, Old Dominion Electric Cooperative (ODEC) filed a petition for waiver of certain provisions of PJM Interconnection, L.L.C.'s (PJM) Open Access Transmission Tariff (OATT) and Amended and Restated Operating Agreement (Operating Agreement) to recover natural gas costs associated with the January 2014 cold weather events.  On June 9, 2015, the Commission denied ODEC's petition finding that the filed rate doctrine and the rule against retroactive ratemaking precluded granting ODEC's waiver request.[1]  On July 9, 2015, as supplemented on August 18, 2015, ODEC filed a request for rehearing of the June Order.  As discussed below, the Commission denies ODEC's request for rehearing.

## I.    **Background**

2.     On June 23, 2014, ODEC filed a petition for waiver of certain provisions of PJM's OATT and Operating Agreement in order to recover $14,925,669.58 in natural gas-related costs that ODEC incurred during the cold weather events of January 2014.[2]  As described in detail in the June Order, the costs at issue include (1) costs incurred in excess of PJM's $1,000/MWh bid cap and (2) costs incurred to comply with dispatch instructions that were cancelled or cut short.  ODEC therefore requested waiver of PJM's $1,000/MWh bid cap and the tariff provisions that define and limit the costs that a

---

[1] *Old Dominion Electric Cooperative*, 151 FERC ¶ 61,207 (2015) (June Order).

[2] ODEC June 23, 2015 Waiver Request at 1 (ODEC Waiver Request).

20160301-3057 FERC PDF (Unofficial) 03/01/2016

Page 5 of 51          Filed: 04/11/2016          Document #1608250          USCA Case #16-1111

generator can recover if a plant dispatch is cancelled or cut short. ODEC conceded that, absent waiver of these tariff provisions, PJM's tariff does not permit recovery of the subject costs.

3.      In the June Order, the Commission denied ODEC's request for waiver of the filed rate, finding that the filed rate doctrine and the rule against retroactive ratemaking precluded granting ODEC's waiver request because ODEC sought to recover costs incurred prior to the date it filed its waiver request. The Commission also found that ratepayers had not received any prior notice of ODEC's requested relief, which was sought roughly five months after the events in question. In light of the Commission's decision to deny the waiver as impermissible retroactive relief, the Commission declined to reach any of ODEC's equitable arguments for granting waiver.[3]

## II.     Request for Rehearing

4.      ODEC alleges that summarily denying its waiver request as barred by the filed rate doctrine and the rule against retroactive ratemaking departs from Commission precedent, and argues that examples of retroactive tariff waivers are plentiful.[4] ODEC analogizes its interactions with PJM operators to cases involving unfiled rate agreements between a utility and its wholesale customer, in which the courts have said that the existence of the rate agreement provides sufficient prior notice regardless of whether "downstream" customers were on notice of the rates in the unfiled agreements.[5] ODEC also contends that PJM stakeholders were on notice that they could be assessed charges for generators' costs incurred to ensure resource availability during emergency conditions. In particular, ODEC asserts that customers were on notice that they could be assessed costs above $1,000/MWh on January 23, 2014 due to (1) a notice posted by PJM on January 21, 2014 acknowledging the problem of high gas prices and announcing its intention to file for a retroactive waiver, and (2) PJM's January 23, 2015 waiver request seeking a prospective waiver.

5.      In addition, ODEC argues that the exigencies of the out-of-the-ordinary events at issue warrant issuance of a waiver despite the interval between the January 2014 events and the filing of ODEC's Waiver Petition. Further, ODEC argues that granting the

---

[3] June Order, 151 FERC ¶ 61,207 at PP 47-48.

[4] ODEC Rehearing Request at 14.

[5] *Id.* at 22-23 (citing *Hall v. FERC,* 691 F.2d 1184 (5th Cir. 1983) (*Hall*); *City of Piqua v. FERC*, 610 F.2d 950, 954 (D.C. Cir. 1979) (*City of Piqua*)).

Filed: 04/11/2016    Page 6 of 51

Document #1608250

USCA Case #16-1111

waiver would not be inconsistent with the purposes of the filed rate doctrine and rule against retroactive ratemaking.[6]

6.    ODEC contends that the Commission erred by ignoring ODEC's demonstration that the standards for granting a waiver have been met. In particular, ODEC states that it demonstrated that its waiver would not have undesirable consequences, such as harming third parties. ODEC argues that the Commission erred in finding harm due to lack of notice.

7.    Finally, ODEC argues that the assurances given by the PJM dispatchers that ODEC would be made whole implicate application of the apparent authority theory. ODEC avers that PJM dispatchers were acting within the scope of their apparent authority when communicating with ODEC and that reliance on this communication caused the pecuniary loss for which ODEC seeks to be made whole through this waiver.[7]

## III.   Discussion

### A.   Procedural Matters

8.    Section 313(a) of the Federal Power Act (FPA)[8] and Rule 713(b) of the Commission's Rules of Practice and Procedure[9] require a request for rehearing to be filed within 30 days after issuance of any final decision or other final order in a proceeding.[10] On August 18, 2015, ODEC filed a supplemental rehearing request. We reject ODEC's supplemental rehearing request because it was filed more than 30 days after the issuance of the June Order.[11]

---

[6] *Id.* at 27 (citing *Consolidated Edison*, 347 F.3d 964, 969-970 (D.C. Cir. 2003); *Exxon Mobil Corp.* v. *FERC*, 182 F.3d 30, 49 (D.C. Cir. 1999); *Towns of Concord v. FERC*, 955 F.2d 67, 76 (D.C. Cir. 1992); *Cal. Pub. Utils. Corp. v. FERC*, 988 F.2d 154, 164 (D.C. Cir. 1993) (*CPUC*)).

[7] *Id.* at 35-37.

[8] 16 U.S.C. § 825k (2012).

[9] 18 C.F.R. § 385.713(b) (2015).

[10] *Pub. Serv. Comm'n of Wisconsin*, 150 FERC ¶ 61,104, at P 147 (2015).

[11] *E.g.*, *CMS Midland, Inc.*, 56 FERC ¶ 61,177, at 61,623 (1991); *Pub. Serv. Co. of New Hampshire*, 56 FERC ¶ 61,105, at 61,403 (1991).

Page 7 of 51    Filed: 04/11/2016    Document #1608250    USCA Case #16-1111

### B.    Substantive Matters

9.     As discussed below, we deny ODEC's request for rehearing. ODEC's waiver request seeks to recover costs related to generation service provided to PJM in January 2014, although PJM's OATT and Operating Agreement on file with the Commission in January 2014 did not allow the recovery of those costs and no notice had been provided to PJM's ratepayers that the rates paid for service in January 2014 were subject to subsequent revision.[12] Such retroactive recovery of costs related to a past service is a classic example of a violation of the filed rate doctrine and the prohibition of retroactive ratemaking.

10.     The FPA requires public utilities to "file with the Commission" and "keep open in convenient form and place for public inspection schedules showing all rates and charges for any transmission or sale subject to the jurisdiction of the Commission."[13] When a public utility seeks to change its filed rate, it must "fil[e] with the Commission and keep[] open for public inspection new schedules stating plainly the change or changes in the schedule or schedules then in force and the time when the change or changes go into effect."[14] As a consequence, regulated utilities are forbidden to charge rates for services other than those on file with the Commission, a prohibition that has become known as the filed rate doctrine.[15] The related rule against retroactive ratemaking also "prohibits the Commission from adjusting current rates to make up for a utility's over- or under-collection in prior periods."[16]

---

[12] *See, e.g.,* June Order, 151 FERC ¶ 61,207 at P 46 ("ODEC does not dispute that such natural gas cost recovery is not currently allowed by the PJM OATT or Operating Agreement").

[13] 16 U.S.C. § 824d(c) (2012).

[14] 16 U.S.C. § 824d(d) (2012).

[15] *West Deptford Energy, LLC v. FERC*, 766 F.3d 10, 11 (D.C. Cir. 2014) (*West Deptford*) (citing *NSTAR Elec. & Gas Corp. v. FERC*, 481 F.3d 794, 800 (D.C. Cir. 2007); *Ark. La. Gas Co. v. Hall*, 453 U.S. 571, 577 (1981)).

[16] *Towns of Concord v. FERC*, 955 F. 2d 67, 71 & n. 2 (D.C. Cir. 1992). See *Associated Gas Distributors v. FERC*, 898 F.2d 809, 810 (D.C. Cir 1990) (*per curiam*) (Williams, J. concurring), describing the relationship between the filed rate doctrine and the rule against retroactive ratemaking.

20160301-3057 FERC PDF (Unofficial) 03/01/2016

Page 8 of 51      Filed: 04/11/2016      Document #1608250      USCA Case #16-1111

11.     ODEC nevertheless contends that the Commission has authority to retroactively waive a tariff in order to authorize "actions other than those prescribed by the filed rate." ODEC argues that the Commission can do this when it concludes that "the tariff should not be applied under a particular out-of-the-ordinary set of facts . . . based on 'considerations of hardship, equity, or more effective implementation of overall policy.'"[17]  ODEC argues that this case presents such equitable considerations.  We disagree.

12.     The United States Court of Appeals for the District of Columbia Circuit carefully considered the issue of the Commission's authority to waive the filed rate retroactively based on equitable considerations in *Columbia Gas Transmission Corporation v. FERC I, II, and III*,[18] and the court concluded unequivocally that the Commission has no such authority.  That case arose from the Commission's issuance of a rule in 1980 stating that it intended to permit natural gas producers to recover certain production-related costs from their pipeline sales customers.[19]  However, the Commission stated that it would not accept producer applications for recovery of these costs until it completed a further rulemaking to establish an appropriate generic allowance for such costs.  The Commission also stated that, after completion of the rulemaking, it would provide producers a mechanism to recover the production-related costs they incurred during the interim period.[20]  Three years later, in 1983, the Commission issued the rule establishing the generic allowance and permitting producers to charge pipelines for the $1.5 billion in production-related costs they had incurred with respect to their sales to the pipelines between 1980 and 1983.  The pipelines' existing tariffs permitted them to flow through the deferred charges to their current downstream customers based on those customers' current purchases.  Rather than pursue this method, however, five pipelines petitioned the Commission to recover these costs in retroactive surcharges to their past downstream customers who had purchased gas during the 1980-1983 period.  The pipelines contended that, due to restructuring changes in the natural gas market, they were unable to recover

---

[17] ODEC Rehearing Request at 11.

[18] 831 F.2d 1135 (D.C. Cir. 1987) (*Columbia I*); 844 F.2d 879 (D.C. Cir. 1987) (*Columbia II*); 895 F.2d 791 (D.C. Cir. 1990) (*Columbia III*).

[19] *Columbia III,* 895 F.2d at 792 (citing *Order Amending Interim Regulations Under the Natural Gas Policy Act of 1978 and Establishing Policy Under the Natural Gas Act,* Order No. 94, FERC Stats. and Regs., Regulations Preambles 1977-1981 ¶ 30,178 (1980)).

[20] *Id.* at 31,218

USCA Case #16-1111      Document #1608250      Filed: 04/11/2016      Page 9 of 51

these costs from current customers, leaving large unrecovered balances.[21]  The pipelines argued that considerations of equity required those who had purchased that gas in 1980-1983 to pay its true cost through direct bills based on past purchases.[22]  The Commission approved these retroactive surcharge proposals, concluding they were not retroactive ratemaking because "Order No. 94-A expressly authorized the collection of retroactively effective allowances which, to the extent directly billed now, are a cost to those customers."[23]

13.     On appeal, the D.C. Circuit held in *Columbia I* that the Commission's approval of the pipelines' retroactive surcharge proposals violated the filed rate doctrine.  The court found that, while the Commission had given notice that producers would be permitted to impose a retroactive surcharge on the pipelines, no similar notice had been given that pipelines could impose a retroactive surcharge on their downstream sales customers.[24]  The Commission sought rehearing of the court's decision, arguing that section 4(d) of the Natural Gas Act permitting the Commission to waive the 30-day prior notice period "for good cause shown" allows the Commission to waive the filed rate doctrine.[25]  In *Columbia II*, the court denied rehearing, but stated that, in light of the magnitude of the costs at issue, the Commission could consider the waiver issue on remand.[26]

14.     On remand, the Commission found that it had authority to waive the filed rate doctrine "for good cause shown."  The Commission found good cause in this case, because the pipelines' retroactive surcharge proposals would ensure that current natural gas pricing signals were not distorted by an influx of substantial retroactive production-related costs into the pipelines' current sales rates and would equitably charge past customers for costs the pipelines incurred on their behalf.  The Commission concluded

---

[21] *See Transcontinental Gas Pipe Line Corp.*, 32 FERC ¶ 61,230, at 61,543 (1985) (*Transco*).

[22] *Id.*

[23] *Id.* at 61,544-45.

[24] *Columbia I*, 831 F.2d at 1141-42.

[25] The corresponding provision of the FPA is in section 205(d).

[26] *Columbia II*, 844 F.2d at 880.

Page 10 of 51

Filed: 04/11/2016

Document #1608250

USCA Case #16-1111

that "the overriding public interest in the maintenance of orderly gas markets through the equitable allocation of costs" made it "necessary and proper . . . to waive the filed rate doctrine."[27]

15.     In *Columbia III*, the D.C. Circuit reversed the Commission and held that the Commission has no authority to retroactively waive the filed rate. The court began its discussion by stating that "[n]o court has squarely decided whether the Commission's waiver power may extend backward past the original filing date absent the parties' agreement. Indeed, resolution of the conflict between the waiver power and the retroactive ratemaking rule presents difficult questions of statutory interpretation and regulatory policy."[28] The court then proceeded to resolve this conflict and held that the Commission has no authority to waive the filed rate retroactively in order to permit a utility to modify a rate charged for services during a prior period, when there was no notice that the rate was subject to change.[29]

16.     The court acknowledged that prior notice, such as the notice the Commission provided pipelines that the rates they were paying to producers were subject to later revision:

> changes what would be purely retroactive ratemaking into a functionally prospective process by placing the relevant audience on notice at the outset that the rate being promulgated are provisional only and subject to later revision. This in no way dilutes the general rule that once a rate is in place with ostensibly full legal effect and is not made provisional, it can then be changed only prospectively.[30]

The court concluded, however, that, because the Commission failed to provide adequate notice to the pipelines' downstream customers that the price they paid for gas during the 1980-1983 period would be subject to adjustment, "the Commission was without authority to impose a retroactive surcharge for whatever cause."[31] The court recognized

---

[27] *Transcontinental Gas Pipe Line Corp.*, 45 FERC ¶ 61,169, at 61,488 n.26 (1988).

[28] *Columbia III*, 895 F.2d at 795 (quoting *City of Girard v. FERC*, 790 F.2d 919, 924 (D.C. Cir. 1986)).

[29] *Columbia III*, 895 F.2d at 797.

[30] *Id.*

[31] *Id.*

Filed: 04/11/2016    Page 11 of 51

Document #1608250

USCA Case #16-1111

that the Commission "may well have been correct in its assessment of the equities here involved and of the distortion in market signals that may result from the allocation of $1.5 billion in prior production costs to current sales."  However, the court stated that it was "unaware, however, of any principle in equity or law that empowers an agency to ignore explicit legislative commands . . . ."[32]

17.    We find that the court's unambiguous instruction in *Columbia III* dictates the result here.  ODEC has acknowledged that the PJM OATT in force at the time of the transactions at issue here did not permit recovery of the costs which ODEC seeks to recover through this waiver.[33]  Whether ODEC's equitable arguments for waiving the filed rate may have merit is beside the point, as *Columbia III* makes clear that those equitable considerations do not bestow upon the Commission the authority to waive the filed rate doctrine.[34]  ODEC argues that its request for waiver would avoid the inequity of forcing it "to 'eat' nearly $15 million in costs incurred in good faith following PJM's dispatch instructions under tariff provisions that the Commission found should be waived prospectively to avoid unreasonable outcomes and/or tariff provisions that the Commission subsequently found may be unjust and unreasonable, as well as PJM procedures that PJM has indicated may have been inadequate to address the circumstances in January 2014."[35]  However, *Columbia III* involved similar circumstances, in which pipelines sought waiver of the filed rate doctrine to avoid having to absorb a substantial portion of an amount 1000 times greater ($1.5 billion) in natural gas purchase costs the pipelines incurred in good faith to serve their customers during the period the Commission was determining the amount of the production-related cost allowance the producers could charge the pipelines.[36]  Indeed, unlike this case, in *Columbia*, the Commission had found that it would provide retroactive recovery to the producers; yet even that notification was deemed insufficient to permit pipeline recovery from past customers.  Here, customers had not been provided any notice that these costs

---

[32] *Id.*

[33] June Order, 151 FERC ¶ 61,207 at P 46.

[34] *Columbia III*, 895 F.2d at 797.

[35] ODEC Rehearing Request at 12.

[36] See *Panhandle Eastern Pipe Line Co. v. FERC*, 95 F.3d 62 (D.C. Cir. 1996), affirming the Commission's order on remand following *Columbia III* requiring pipelines to refund, without interest, the amounts collected pursuant to their retroactive surcharges.

for past sales could be recovered.[37]  Thus, we continue to find that ODEC's waiver request is barred by the filed rate doctrine and the rule against retroactive ratemaking.

18.     ODEC contends that the Commission's action in this case is inconsistent with numerous other Commission orders, where ODEC asserts that the Commission has granted retroactive waivers of utility tariff provisions.  As discussed below, we believe the orders cited by ODEC are distinguishable from the present case or do not warrant reaching a different conclusion.

19.     We find that many of the cases cited by ODEC are distinguishable from the situation presented here because they deal with non-rate terms and conditions, such as deadlines and other qualification requirements for participating in PJM and New England ISO capacity auctions[38] or penalties for untimely or inaccurate information submissions.[39]  However, in this case, we need not reach the issue of the breadth of our authority to grant

---

[37] Cf. CPUC, 988 F.2d. at 154, in which the court found that a pipeline's request for rehearing and its appeal of orders prohibiting the use of a particular recovery mechanism gave sufficient notice to allow use of that mechanism following reversal of those orders.

[38] Portsmouth Genco, LLC, 151 FERC ¶ 61,064 (2015); Robinson Power Co., 150 FERC ¶ 61,123 (2015); Future Power PA LLC, 150 FERC ¶ 61,089 (2015); National Grid USA and Laidlaw Berlin BioPower, LLC, 129 FERC ¶ 61,212 (2009); ISO New England Inc-EnerNOC, Inc., 122 FERC ¶ 61,297 (2008); Acushnet Co., 122 FERC ¶ 61,045 (2008); Waterbury Generation LLC, 120 FERC ¶ 61,007 (2007).

[39] San Diego Gas & Elec. Co., 151 FERC ¶ 61,215 (2015) (granting a waiver to relieve a utility of penalties associated with untimely submission of settlement-quality meter data); Midcontinent Independent System Operator, Inc., 151 FERC ¶ 61,051 (2015) (granting retroactive waiver of an early termination notice provision); EDP Renewables North America LLC, 149 FERC ¶ 61,069 (2014) (granting retroactive waiver of information submittal requirements); California Ind. Sys. Operator Corp., 147 FERC ¶ 61,132 (2014) (granting retroactive waiver to relieve suppliers of minimum performance threshold requirements for providers of frequency regulation services); Pacific Gas and Elec. Co., 139 FERC ¶ 61,007 (2012) (granting retroactive waiver to relieve utility of inaccurate meter data penalties); California Ind. Sys. Operator Corp., 135 FERC ¶ 61,159 (2011) (granting retroactive waiver to relieve scheduling coordinators of penalties for submitting untimely meter data for a 15-month period); California Ind. Sys. Operator Corp., 129 FERC ¶ 61,127 (2009) (granting retroactive waiver of penalties associated with errors in submitting self-schedules).

Filed: 04/11/2016          Page 13 of 51

Document #1608250

USCA Case #16-1111

retroactive waivers of non-rate terms and conditions.[40]  As described above, a central purpose of the filed rate doctrine and the rule against retroactive ratemaking is to protect ratepayers from being subjected to an additional surcharge above the rate on file for service already performed.  ODEC's request for waiver presents the classic situation addressed by the filed rate doctrine and the prohibition against retroactive ratemaking of a utility seeking to impose on ratepayers an additional surcharge for service already performed.

20.      We also find that ODEC's reliance on cases such as *PJM Interconnection, L.L.C.*[41] and *New York Independent System Operator, Inc.*[42] is misplaced because these cases dealt with circumstances where the waiver at issue did not conflict with the filed rate, but was necessary to give effect to the intent of the tariff on file with the Commission.[43]  We find that several of the other retroactive cost recovery cases that are cited by ODEC are inapposite here because, in those cases, prior notice had been given to ratepayers that they would be responsible for the costs at issue.[44]  Courts have stated that, while notice does not relieve the Commission of the bar on retroactive ratemaking, it "changes what would be purely retroactive ratemaking in a functionally prospective process by placing the relevant audience on notice at the outset that the rates being promulgated are provisional only and subject to later revision."[45]

---

[40] A retroactive waiver of a non-rate term and condition that does not subject ratepayers to an additional surcharge may not violate the filed rate doctrine or the rule against retroactive ratemaking.  For example, a retroactive waiver of a deadline for participating in a capacity auction may only affect rates for future service.

[41] 148 FERC ¶ 61,217 (2014) (*PJM*).

[42] 139 FERC ¶ 61,108 (2012) (*NYISO*).

[43] See *PJM*, 148 FERC ¶ 61,217 at P 13; *NYISO*, 139 FERC ¶ 61,108 at P 13.

[44] See *Midwest Independent Transmission System Operator, Inc.*, 142 FERC ¶ 61,170, at PP 84-86 (2013); *Braintree Electric Light Department*, 116 FERC ¶ 61,121 (2006), *reh'g denied*, 120 FERC ¶ 61,097, at PP 1, 4-5 (2007) (filing of petition for declaratory order by Braintree put customers on notice that Braintree would be seeking to recover costs associated with a reliability must run agreement); *Cal. Indep. Sys. Operator Corp.*, 139 FERC ¶ 61,207, at P 4 (2012) (CAISO's announcement of the administrative prices that would apply during a system emergency put market participants on notice even though the Commission later found that those administrative prices were not authorized by CAISO's tariff).

[45] *CPUC v. FERC*, 988 F.2d at 164.

Page 14 of 51

Filed: 04/11/2016

Document #1608250

USCA Case #16-1111

21.     We also reject ODEC's contention that, in the circumstances of this case, PJM and its ratepayers had sufficient notice in January 2014 that ODEC would seek to recover these costs to satisfy the filed rate doctrine and the rule against retroactive ratemaking. ODEC contends that PJM was plainly on notice that it would seek to recover these costs, as evidenced by PJM's assurances before the costs were incurred that ODEC would be able to be made whole for them.  ODEC asserts that this is analogous to cases involving unfiled agreements for service between a utility and its wholesale customer, where the courts have held that the existence of the rate agreement between those two parties provided sufficient prior notice, regardless of whether downstream customers were on notice of the rates in the unfiled agreements.[46]

22.     We find that ODEC's reliance on the "unfiled rate" cases is misplaced.  Those cases dealt with written agreements for service that were ultimately filed with the Commission.  The court explained that in those cases the Commission was not granting retroactive relief, but rather was giving "prospective application to the rates contractually authorized by the parties at the effective date contemplated by the contract."[47]  Here, however, there was no contract between ODEC and PJM providing for ODEC's recovery of the costs at issue here, but only informal statements by PJM concerning cost recovery that were contrary to its tariff on file.[48]  Thus, PJM is required to abide by the terms of its OATT and Operating Agreement and, as acknowledged by PJM,[49] the fuel cost recovery that ODEC seeks was not allowed under PJM's OATT or Operating Agreement. Moreover, unlike the situation in the *Hall* and *City of Piqua* cases cited by ODEC, involving bilateral contracts between a producer/utility and a single customer, PJM's OATT and Operating Agreement govern not only ODEC's recovery of its costs from PJM, but also PJM's recovery of those costs from its ratepayers.  PJM cannot modify those generally applicable tariffs through a bilateral contract with a single generator, and any informal, private agreement between PJM and ODEC equally cannot serve to modify PJM's filed tariff.[50]

---

[46] *See Hall*, 691 F.2d at 1192; *City of Piqua*, 601 F.2d at 951, 954.

[47] *Hall*, 691 F.2d at 1192.

[48] *See, e.g.,* ODEC Waiver Request at 33-34, 56.

[49] *See, e.g.,* PJM July 28, 2014 Comments at 7-9.

[50] *PJM Interconnection, L.L.C.*, 149 FERC ¶ 61,059, at P 16 (2014); *see West Deptford*, 766 F.2d at 71 (finding PJM's unilateral statements in pleadings insufficient to provide notice that a rate other than the filed rate could be charged).

Filed: 04/11/2016     Page 15 of 51

Document #1608250

USCA Case #16-1111

23.     We also reject ODEC's assertions that the extraordinary circumstances associated with operations in PJM during January 2014 were sufficient to give PJM's ratepayers notice that ODEC might seek relief of the type requested here.  ODEC contends that, while ratepayers may not have received prior notice of ODEC's specific request, they have been on notice that prices for electricity under PJM's Tariff and Operating Agreement can vary, and have spiked, in conjunction with peak usage in extraordinary weather conditions that affect the price and availability of natural gas used to generate needed electricity.  The court rejected a similar contention in *Columbia I*.  There, the Commission argued that the pipelines' downstream customers had notice that they might be subject to a retroactive surcharge for 1980-1983 production-related costs, because the Commission had given notice in 1980 that it would permit the producers to recover those costs from pipelines and section 601 of the Natural Gas Policy Act required the Commission to allow pipelines to pass through those costs.  However, the court held that those facts did not constitute sufficient notice, because the Commission orders only provided notice that the Commission would provide the producers a retroactive recovery mechanism.  The mere circumstance that the Commission's authorization for producers to recover the costs retroactively from the pipelines might lead to a situation in which pipelines would, in turn, desire a similar retroactive recovery mechanism was insufficient to provide the necessary notice that the filed tariff mechanism for pipelines to recover these costs from their customers might be modified retroactively.  So also in this case, the mere fact that ODEC faced circumstances in January 2014 that might cause it to incur costs not otherwise recoverable under PJM's filed tariff did not provide sufficient notice that PJM and its ratepayers could be subject to a retroactive surcharge.

24.     In addition, we reject ODEC's contention that market participants were on notice from PJM's posting that they could be assessed charges for generators' costs in excess of the $1,000/MWh offer cap.  ODEC's claims for costs above $1,000/MWh related to energy market outcomes for the operational day of January 23, 2014.  The June Order, however, rejected the argument that the $1,000 offer cap waiver could be applied earlier, since insufficient notice had been provided, [51] and granted the waiver effective January 24, 2014, as requested by PJM.[52]  Thus, market participants were not on notice that they could be responsible for these excess charges on January 23, 2014.  Moreover,

---

[51] *See West Deptford*, 766 F.2d at 71 (finding PJM's statements in pleadings insufficient to provide notice).

[52] *PJM Interconnection, L.L.C.*, 149 FERC ¶ 61,059 at P 18 ("PJM filed its waiver request to modify the terms and conditions of its Tariff for a short period on January 23, 2014, to be effective prospectively commencing January 24, 2014.  The Commission did not waive the Tariff provisions at issue in any period prior to January 24, 2014, nor did the Commission provide a remedy for resources' under-recovery in prior periods.").

Page 16 of 51

Filed: 04/11/2016

Document #1608250

USCA Case #16-1111

ODEC did not seek rehearing of the January 24, 2014 Order Granting Waiver,[53] which set the January 24, 2014 effective date, nor did it appeal the Commission's denial of the PJM Market Monitor's rehearing request to change the effective date of the waiver from January 24, 2014 to January 22, 2014.[54] Further, the facts presented here do not fit scenarios in which the Commission has invoked the notice exception to the filed rate doctrine; for example, the $1,000/MWh offer cap is neither part of a formula rate, nor is it the result of any judicial action.

25.     We find that ODEC's arguments to justify the interval between the January 2014 extreme weather events and the filing of ODEC's waiver request to be irrelevant.  The Commission did not base its denial of ODEC's waiver on the amount of time that passed before ODEC filed its waiver request.  Rather, the Commission relied on the filed rate doctrine and the rule against retroactive ratemaking in its finding that the relief sought by ODEC was impermissible.[55]  ODEC's arguments regarding the purpose of the filed rate doctrine and rule against retroactive ratemaking are equally unavailing because, as explained above, courts have found that the Commission does not have the discretion to waive the filed rate doctrine, regardless of other equitable considerations.

26.     Because we affirm the Commission's prior finding that notice had not been provided to PJM's ratepayers and that the relief requested by ODEC is barred by the filed rate doctrine and the rule against retroactive ratemaking, we find no error in the Commission's omission of a detailed analysis of whether ODEC's request met the Commission's waiver standards.  For the same reason, we find that the Commission did not need to address ODEC's equitable arguments and we decline to do so here.

27.     Finally, although we reject ODEC's supplemental rehearing request as untimely, we note that we would still deny rehearing even had the supplemental filing been considered.  In its supplemental filing, ODEC sought to discuss the Commission's

---

[53] *PJM Interconnection, L.L.C.*, 146 FERC ¶ 61,041 (2014) (January 24, 2014 Order Granting Waiver).

[54] *PJM Interconnection, L.L.C.*, 149 FERC ¶ 61,059 at P 17 (denying the PJM Market Monitor's rehearing request, the Commission explained that PJM requested, and the Commission granted, the waiver to be effective January 24, 2014 and that the PJM Market Monitor failed to establish that sufficient notice was provided for any day earlier than the date of filing).

[55] June Order, 151 FERC ¶ 61,207 at PP 45-48.

Page 17 of 51

Filed: 04/11/2016

Document #1608250

USCA Case #16-1111

July 29, 2015 order granting tariff waiver in Docket No. ER15-817-000,[56] and claimed that the Commission's decision in *CAISO* supports ODEC's request for retroactive waiver. In the *CAISO* proceeding, the Commission granted the waiver over filed rate doctrine objections, when the party that would be responsible for the refunds resulting from the waiver supported the waiver, no intervenors asserted that they would suffer harm from the waiver, and the Commission found that no third parties would be harmed by the waiver.[57] In contrast, in this proceeding, numerous parties objected to having to pay these retroactive assessments, and the PJM Market Monitor claimed the proposal violated the filed rate doctrine.[58] Thus, the Commission's decision in that proceeding does not support ODEC's request for retroactive relief.[59]

The Commission orders:

ODEC's request for rehearing is hereby denied, as discussed in the body of this order.

By the Commission.

( S E A L )

Nathaniel J. Davis, Sr.,
Deputy Secretary

---

[56] *See Cal. Indep. Sys. Operator Corp.*, 152 FERC ¶ 61,086 (2015) (*CAISO*) (granting a request for a waiver to permit CAISO to avoid pricing anomalies in its energy imbalance market).

[57] *Id.* PP 25-27. We note that a rate change that would otherwise be impermissible may be allowed when parties have agreed to change the rate retroactively. *See, e.g.*, *Consolidated Edison Co. v. FERC*, 347 F.3d 964, 969 (D.C. Cir. 2003).

[58] Answer and Motion for Leave to Answer of the Independent Market Monitor for PJM, Docket No. ER14-2242-000, at 3 (Sept. 5, 2014).

[59] While we believe these orders are distinguishable based on the discussion above, even if these cases are not distinguishable, the court's *Columbia III* decision would dictate the rejection of the waiver in this case. *See* Answer and Motion for Leave to Answer of the Independent Market Monitor for PJM, Docket No. ER14-2242-000, at 3 (Sept. 5, 2014).

Page 18 of 51   Filed: 04/11/2016   Document #1608250   USCA Case #16-1111

151 FERC ¶ 61,207
UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Before Commissioners:  Norman C. Bay, Chairman;
Philip D. Moeller, Cheryl A. LaFleur,
Tony Clark, and Colette D. Honorable.

Old Dominion Electric Cooperative                    Docket No.  ER14-2242-000

ORDER DENYING PETITION FOR WAIVER

(Issued June 9, 2015)

1.      On June 23, 2014, pursuant to Rule 207(a)(5) of the Commission's Rules of
Practice and Procedure,[1] Old Dominion Electric Cooperative (ODEC) filed a petition for
waiver of certain provisions of PJM Interconnection, L.L.C.'s (PJM) Open Access
Transmission Tariff (OATT) and Amended and Restated Operating Agreement
(Operating Agreement) in order to allow ODEC to recover natural gas costs associated
with the January 2014 cold weather events.  As discussed below, we deny ODEC's
petition for waiver.

I.      **Background**

2.      ODEC is a not-for-profit generation and transmission electric cooperative utility
and participates in PJM as a load-serving entity to secure power for its member
distribution cooperatives.  ODEC owns three combustion turbine generation facilities
from which PJM requested energy in January 2014:  Louisa, Marsh Run, and Rock
Springs.  The Louisa, Marsh Run, and Rock Springs units are Generation Capacity
Resources.[2]

---

[1] 18 C.F.R. § 385.207(a)(5) (2014).

[2] Capitalized terms (such as Generation Capacity Resources) that are used herein
and not otherwise defined have the meanings as defined in PJM's OATT and Operating
Agreement.  The PJM Operating Agreement, including Schedule 1, §§ 1.7.20
(Communication and Operating Requirements), and 1.10.1A(d) (Day-ahead Energy
Market Scheduling), along with equivalent sections of OATT Attachment K-Appendix
detail a number of requirements for Generation Capacity Resources, including
requirements to offer into the Day-ahead Energy Market; respond to PJM's directives to
start, shutdown or change output levels; and keep offers open through the Operating Day
for which the offer is submitted.

Page 19 of 51

Filed: 04/11/2016

Document #1608250

USCA Case #16-1111

3.    ODEC is a member of the Alliance for Cooperative Energy Services Power Marketing LLC (ACES) and employs ACES as its agent to perform market services related to ODEC's PJM participation, PJM Day-ahead and Real-time trading and scheduling for ODEC's generation resources, and settlement services.  ACES also procures natural gas for ODEC's generation fleet via ODEC's natural gas supply arrangement with its third party natural gas supplier.[3]

## II.    **Waiver Request**

4.    ODEC seeks a waiver of certain provisions of PJM's OATT and Operating Agreement in order to recover $14,925,669.58 in uncompensated, natural gas-related costs that ODEC states it incurred as a result of its efforts to meet PJM's commitment of ODEC's Generation Capacity Resources during the cold weather events of January 2014, which ODEC characterizes as PJM dispatch instructions.[4]  ODEC states that natural gas pipeline restrictions and the overall tight natural gas supply during those events resulted in historically high natural gas prices and scheduling requirements that caused significant challenges for PJM and its market participants.[5]  ODEC states that throughout the month PJM made assurances to ODEC that, if ODEC purchased natural gas in order to run its units as scheduled by PJM, ODEC would be made whole for its fuel costs.  ODEC argues that the Commission should not allow PJM's OATT and Operating Agreement to prevent ODEC from recovering natural gas costs incurred to comply with PJM's dispatch instructions.[6]

5.    ODEC's request for waiver relates to the three following categories of costs, which are each discussed in greater detail below:  (1) actual costs greater than $1,000/megawatt-hour (MWh) incurred for running units according to PJM dispatch instructions on January 23, 2014; (2) costs incurred for natural gas purchased but not burned for units PJM committed but did not dispatch (ODEC characterizes this as a

---

[3] In this order, the Commission refers to ODEC without distinguishing between ODEC and ACES when ACES is acting as ODEC's agent.

[4] ODEC Transmittal Letter at 1.  ODEC states that this characterization of PJM's commitment to run ODEC's resources is not intended as any less binding than if the commitments were referred to as "directives" or being "directed" per the PJM OATT and Operating Agreement.  ODEC Transmittal Letter at 1 & n.2.

[5] *Id.* at 3.  ODEC states that the inconsistencies between natural gas scheduling and operations and electric scheduling and operations likely contributed to the unpredictability and extreme natural gas prices during the January cold weather operations.  ODEC Transmittal Letter at 19-22.

[6] *Id.* at 4.

Filed: 04/11/2016      Page 20 of 51

Document #1608250

USCA Case #16-1111

canceled dispatch); and (3) costs incurred for natural gas purchased but not burned due to PJM's curtailment of a dispatch period.[7]

6.      ODEC states that its request for waiver meets the Commission's four criteria for granting waiver, i.e., it was unable to comply with the tariff provisions at issue in good faith, the waiver is of limited scope, the waiver would address a concrete problem, and the waiver would not have undesirable consequences.[8] First, ODEC states that it has acted in the utmost good faith in connection with the events underlying its waiver requests. ODEC states that its extreme costs resulted from severe weather conditions, natural gas price spikes, and restrictions on natural gas procurement flexibility. Second, ODEC states that the waiver request is limited in scope because it seeks a limited waiver of specific provisions of PJM's OATT and Operating Agreement for specific events and associated costs based on the specific circumstances of ODEC's compliance with PJM dispatch instructions during January 2014 operations.

7.      Third, ODEC states that the waiver would address the concrete problem of the inability of generators to recover legitimate, actual costs incurred to comply with a PJM dispatch instruction during emergency conditions, and that, absent a waiver, PJM's operational flexibility could be threatened in the future when such conditions reoccur.[9] ODEC notes that PJM has undertaken several initiatives which should help alleviate future uncertainty related to the issues in its filing.[10] Lastly, ODEC argues that the waiver would not have undesirable consequences, such as harming third parties, since it "simply allows for an accurate calculation and compensation to ODEC for its actual costs." ODEC states that providing recovery of actual costs is reasonable given the emergency conditions on the PJM system during January 2014 and ODEC's reliance on PJM's statements that ODEC would be made whole. ODEC states that the Commission has previously held that increased costs to load due to more accurate cost recovery calculations do not amount to a legally cognizable harm.[11]

---

[7] *Id.* at 6-7.

[8] *Id.* at 22 (citing *Invenergy Nelson LLC*, 147 FERC ¶ 61,067 (2014)).

[9] *Id.* at 24 (citing *California Indep. Sys. Operator Corp.*, 117 FERC ¶ 61,094 (2006) (Order Instituting Inquiries into Gas-Electric Coordination Issues)).

[10] *Id.* at 25.

[11] *Id.* at 26 (citing *Cal. Indep. Sys. Operator Corp.*, 146 FERC ¶ 61,184, at P 20 (2014) (*CAISO*)).

Page 21 of 51

Filed: 04/11/2016

Document #1608250

USCA Case #16-1111

A. **Request for Waiver Related to Costs above $1,000/MWh**

8.      ODEC requests a waiver of the PJM Operating Agreement, Schedule 1, sections 1.10.1A(d) and 3.2.3, the equivalent sections of OATT Attachment K-Appendix, and any other related Operating Agreement and OATT provisions necessary to recover its actual costs in excess of $1,000/MWh incurred to operate the Rock Springs and Marsh Run units on January 23, 2014.  Thus, ODEC requests that the "make-whole" waiver (Make-Whole Waiver) granted by the Commission in its January 24, 2014 order in Docket No. ER14-1144-000 be extended to ODEC's operation of its Rock Springs and Marsh Run units on January 23, 2014.[12]  ODEC states that, except for the timing, the facts and circumstances of the operation of the Marsh Run and Rock Springs units on January 23, 2014 (summarized below) fit with the make-whole waiver requested by PJM and granted by the Commission.  For the Marsh Run units, ODEC also requests that the waiver allow recovery of the unrecovered difference between ODEC's bid of $948/MWh and the $1,000/MWh offer cap.[13]

9.      ODEC states that on January 22, 2014, ODEC offered the Rock Springs units into the PJM Day-ahead Energy Market for the January 23 operating day at the offer cap price of $1,000/MWh, although ODEC expected its marginal cost of operating the plant on January 23 to exceed $1,000/MWh due to the high price of natural gas.[14]  ODEC states that its bid for the units included a minimum run time of 12 hours because Columbia Gas Transmission, LLC (Columbia) was enforcing a ratable take requirement in its tariff under which customers were required to take their nominated volumes of natural gas evenly through the duration of the flow period of the respective nomination cycle.[15]  ODEC states that the Rock Spring units were not committed in the Day-ahead Energy Market, but, late in the day on January 22, after the clearing of the Day-ahead Energy Market, PJM contacted ODEC and stated that it was requesting the units on January 23

---

[12] PJM Comments at 36-37 (citing *PJM Interconnection, L.L.C.*, 146 FERC ¶ 61,041 (2014) (granting waiver, effective January 24, 2014, to permit sellers who submit cost-based offers from Generation Capacity Resources into the PJM energy markets and whose costs exceed the applicable energy market clearing price to receive a make-whole payment covering the difference between their costs and the clearing price)).

[13] The maximum bid for a generating resource in PJM's Day-ahead Energy Market is $1,000/MWh (offer cap).  PJM Operating Agreement, Schedule 1, section 1.10.1A(d).

[14] ODEC Transmittal Letter at 30.

[15] *Id.*

Filed: 04/11/2016      Page 22 of 51

Document #1608250

USCA Case #16-1111

from 10:00 a.m.[16] to 10:00 p.m. for "conservative operations."[17] ODEC states that the units came on-line at 10:12 a.m. on January 23 and ran until 10:19 p.m. on January 23. ODEC states that the actual costs of operating the Rock Springs units significantly exceeded the $1,000/MWh offer cap which resulted in unrecovered costs totaling $2,098,713.80.[18]

10.    ODEC states that on January 22, 2014, ODEC offered the Marsh Run units into the PJM Day-ahead Energy Market for the January 23 operating day at a cost-based bid of $948/MWh.[19] ODEC states that after the close of the Day-ahead Energy Market, but prior to clearing, PJM contacted ODEC and requested ODEC to secure natural gas for these dual-fuel units to run on January 23 from 5:00 a.m. to 10:00 a.m. and from 4:00 p.m. to 9:00 p.m.[20] ODEC states that its units came online shortly after 5:00 a.m. on January 23 and that costs for running the units significantly exceeded $1,000/MWh offer cap which resulted in unrecovered costs of $611,624.23.[21]

### B.    Request for Waiver Related to Canceled Dispatch

11.    ODEC seeks a waiver of Operating Agreement, Schedule 1, sections 1.10.2(d) and 1.9.7(b), the equivalent sections of OATT Attachment K-Appendix, and any other related Operating Agreement or OATT provisions necessary to permit ODEC to receive a make-whole payment for the three canceled dispatch events summarized below. ODEC states that the PJM Operating Agreement and OATT contain provisions whereby Market Sellers of pool-scheduled resources receive payments or credits for start-up and no-load

---

[16] All times used herein are Eastern Standard Time (EST).

[17] ODEC Transmittal Letter at 9, 31. ODEC states that when PJM is in conservative operations, PJM dispatchers have "the authority to reduce transfers into, across, or through the PJM RTO [Regional Transmission Organization] or take other actions, such as cost assignments to increase reserves and reduce power flows on selected facilities." ODEC Transmittal Letter at n.82 (citing PJM Manual 13, Emergency Operations, at Section 3.2; ODEC Transmittal Letter, Ex. 11 (PJM January Operations Report) at 47 (explaining that PJM dispatchers scheduled resources with long minimum run times pursuant to their conservative operations authority)).

[18] *Id.* at 8-9.

[19] *Id.* at 9. The Marsh Run units are dual-fuel resources that can run on either natural gas or fuel oil.

[20] *Id.* at 33.

[21] *Id.* at 9-10.

Page 23 of 51          Filed: 04/11/2016          Document #1608250          USCA Case #16-1111

fees or, alternatively, can recover actual costs incurred up to a cap of the resource's start-up cost, if PJM cancels the resource as a pool-scheduled resource and notifies the Market Seller before the resource is synchronized.[22]  ODEC states that it is seeking a waiver of the provision limiting recovery of actual costs for canceled dispatch to start-up costs.[23]  ODEC states that each of the canceled dispatch events that are the subject of this waiver request meets the criteria for reimbursement under Operating Agreement, Schedule 1,

---

[22] ODEC Transmittal Letter at 43 (citing PJM OA Schedule 1, Section 1.10.2; PJM Manual 13, Emergency Operations, Section 3.3).  The Operating Agreement (and mirror provisions in OATT Attachment K – Appendix) provide as follows at Schedule 1 (emphasis added):

> (d) The Market Seller of a resource selected as a pool-scheduled resource shall receive payments or credits for energy, demand reductions or related services, or for start-up and no-load fees, from the Office of the Interconnection on behalf of the Market Buyers in accordance with Section 3 of this Schedule 1.  *Alternatively, the Market Seller shall receive, in lieu of start-up and no-load fees, its actual costs incurred, if any, up to a cap of the resources' start-up cost, if the Office of the Interconnection cancels its selection of the resource as a pool-scheduled resource and so notifies the Market Seller before the resource is synchronized.*

[23] With respect to start-up costs, Operating Agreement, Schedule 1, section 1.9.7(b)(ii) provides in part as follows:

> (b) Market Sellers authorized to request market-based start-up and no-load fees may choose to submit such fees on either a market or a cost basis.  Market Sellers must elect to submit both start-up and no-load fees on either a market basis or a cost basis and any such election shall be submitted on or before March 31 for the period of April 1 through September 30, and on or before September 30 for the period October 1 through March 31.  The election of market-based or cost-based start-up and no-load fees shall remain in effect without change through the applicable periods.
>
> (ii) If a Market Seller chooses to submit cost-based start-up and no-load fees, such fees must be calculated as specified in the PJM Manuals and the Market Seller may change both cost-based fees daily and must change both fees as the associated costs change, but no more frequently than daily.

ODEC states that, pursuant to these provisions, it submits cost-based start-up and no-load fees on a daily basis, calculated in accordance with the PJM Manual 15.  ODEC Transmittal Letter at 45.

20150609-3066 FERC PDF (Unofficial) 06/09/2015

section 1.10.2: (1) each unit at issue meets the definition of "pool-scheduled" because each was committed by PJM subsequent to the Day-ahead Energy Market; and (2) PJM canceled the selection of the units prior to the synchronization of the units.[24]

12.     ODEC states that on January 6, 2014, it offered the Rock Springs units into the PJM Day-ahead Energy Market for the January 7 operating day with a cost-based and price-based status of Maximum Emergency because of pipeline restrictions, but the units did not clear.[25] ODEC states that on the operating day of January 7, through a series of telephone conversations beginning at approximately 2:30 a.m. through approximately 10:40 a.m., PJM scheduled the units for dispatch for the 16-hour period from 6:00 p.m. on January 7 to 10:00 a.m. on January 8.[26] ODEC asserts that PJM assured ODEC that, for this 16-hour commitment period, ODEC would be made whole for its natural gas purchased to meet PJM's dispatch instructions.[27] ODEC states that due to pipeline nomination schedules and operational restrictions, its ability to secure natural gas and bring the Rock Springs units online was delayed until 10:42 p.m. on January 7.[28] ODEC states that, at that time, it informed PJM that the units were available to come online, but PJM stated that it no longer needed the units and canceled the entire January 7-8

---

[24] ODEC Transmittal Letter at 44.

[25] *Id.* at Ex. 2, p. 7.

[26] *Id.* at 48. ODEC states that the 16-hour minimum run time was necessary because Columbia was enforcing a ratable take requirement in its tariff, under which a shipper must take its nominated volumes of natural gas evenly through the flow period of the nomination cycle. *Id.* at Ex. 2, p. 9.

[27] *Id.* at 48.

[28] ODEC states that in order for natural gas to flow at 6:00 p.m. on the operating day, the current nomination deadline for an Intra-day 1 nomination is 11:00 a.m. ODEC Transmittal Letter at 57. ODEC states that despite having been told by its natural gas supplier that the natural gas supplies were arranged for a 6:00 p.m. start, apparently the nomination was not submitted by the natural gas supplier during the Intra-day 1 period and therefore, the next opportunity for a nomination was the Intra-Day 2 cycle at 6:00 p.m. on January 7, for natural gas flow to start at 10:00 p.m. that day. ODEC states that at 4:27 p.m. ODEC communicated this delay to PJM and PJM affirmed that the Rock Springs units dispatch was "pushed back" to commence at 10:00 p.m. on January 7. ODEC states that at 10:00 p.m., when the units were to commence operations, Columbia informed ODEC that it would not have the natural gas for the units to burn because an interconnecting pipeline said that it could not supply the natural gas. ODEC Transmittal Letter at 58. At 10:42 p.m., on January 7, the natural gas supply issue between the two pipelines was resolved and fuel was available to commence operations. *Id.*

Filed: 04/11/2016          Page 25 of 51

Document #1608250

USCA Case #16-1111

dispatch.[29] ODEC states that, taking into account resale revenues and other costs for which it has decided to forego requesting a make-whole payment, there are still outstanding unrecovered costs associated with this event of $1,783,036.92.[30]

13.     ODEC states that, on January 22, 2014, ODEC bid the Louisa units into the PJM Day-ahead Energy Market for the January 23 operating day. ODEC states that, prior to the clearing of the Day-ahead Energy Market, and despite having lower-cost oil available, PJM requested that ODEC procure natural gas to run the units on January 23 from 5:00 a.m. to 10:00 a.m. and from 4:00 p.m. to 9:00 p.m. ODEC states that it informed PJM that the costs would be in the thousands of dollars per MWh and PJM emphasized to ODEC that the units would run at some point.[31] ODEC states that the units did not clear the Day-ahead Energy Market. ODEC states that PJM informed ODEC early in the morning of January 23 that, due to transmission constraints, it would not be able to dispatch the Louisa units during 5:00 a.m. to 10:00 a.m. and canceled the morning dispatch. ODEC further states that PJM ran the units during 4:00 p.m. to 9:00 p.m. on January 23. ODEC states that its outstanding unrecovered costs associated with the morning canceled dispatch total $3,481,385.04, taking into account revenues from reselling the procured natural gas.[32]

14.     ODEC states that on January 27, 2014, PJM issued a Maximum Emergency Generation Alert for January 28. ODEC states that on January 26, 2014, it bid the Rock Springs units into the PJM Day-ahead Energy Market, but they did not clear. ODEC states that between 3:00 p.m. and 4:00 p.m. ODEC and PJM had several telephone conversations concerning the Rock Springs units including that the units had a 24-hour minimum run time due to pipeline restrictions.[33] ODEC states that a little after 4:00 p.m. on January 27, PJM formally committed the units to run from 10:00 a.m. on January 28

---

[29] *Id.* at Ex. 2, p. 11.

[30] *Id.* at 10-11.

[31] *Id.* at 65. ODEC states that due to an Operational Flow Order issued by Transcontinental Gas Pipe Line Company for the January 21, 2014 natural gas day through the January 25, 2014 natural gas day and natural gas balancing restrictions, ODEC was unable to procure natural gas on a post-cycle basis (i.e., after the operation of the units as well as after all nomination cycles had passed), such that when the PJM request to procure natural gas for a specific dispatch period was issued, natural gas had to be purchased by the Intra-Day 2 nomination cycle deadline to meet PJM's morning commitment.

[32] *Id.* at 11.

[33] *Id.* at Ex. 2, p. 19.

Filed: 04/11/2016          Page 26 of 51

Document #1608250

USCA Case #16-1111

to 10:00 a.m. on January 29, and ODEC purchased natural gas for the 24-hour dispatch.[34] ODEC states that at 7:06 a.m. on January 28, PJM canceled the entire dispatch. ODEC states that its outstanding unrecovered costs associated with the event total $6,529,372.70, taking into account natural gas that was resold after the cancellation.[35]

## C. <u>Request for Waiver Related to Natural Gas Balancing Losses</u>

15.     ODEC seeks a waiver from PJM Operating Agreement, Schedule 1, section 3.2.3 and parallel provisions in the OATT so that ODEC can recover the cost of natural gas purchased in order to comply with specific PJM dispatch instructions, but not utilized to produce energy because PJM subsequently cut the dispatch short.[36] As described in more detail below, ODEC states that the Marsh Run and Louisa units operated on January 23 and January 28, respectively, but incurred natural gas balancing costs due to PJM cutting short the units' planned commitment time. ODEC states that under PJM's methodology for the reimbursement of costs greater than $1,000/MWh pursuant to the waiver granted in Docket No. ER14-1144-000, ODEC's cost recovery would be limited to costs related to natural gas volumes actually burned.[37] However, ODEC states that, in addition to those costs, it incurred natural gas costs for volumes purchased to meet PJM's dispatch instructions, but not burned because PJM later cut the dispatch short.

---

[34] *Id.*

[35] *Id.* at 11-12.

[36] *Id.* at 13. PJM Operating Agreement, Schedule 1, section 3.2.3 (Operating Reserves) provides in relevant part:

(f-1) a Market Seller's combustion turbine or combined cycle operating unit in simple cycle mode that is pool-scheduled (or self-scheduled, if operating according to Section 1.10.3(c) hereof), operated as requested by the Office of the Interconnection, shall be compensated for lost opportunity cost, and shall be limited to the lesser of the unit's Economic Maximum or the unit's Maximum Facility Output, if either of the following conditions occur:

(ii) if the unit output is reduced at the direction of the Office of the Interconnection and the real time LMP at the unit's bus is higher than the unit's offer corresponding to the level of output requested by the Office of the Interconnection (as directed by the PJM dispatcher), then the Market Seller shall be credited in a manner consistent with that described above for a steam unit or a combined cycle unit operating in combined cycle mode.

[37] *Id.* at 82.

Filed: 04/11/2016      Page 27 of 51

Document #1608250

USCA Case #16-1111

16.     The facts are the same as those discussed *supra* in paragraph 10.  ODEC states that its Marsh Run units' morning operations were shorter than the run time planned by PJM and for which ODEC procured natural gas, resulting in ODEC incurring substantial losses on the cash-out of the natural gas imbalance.  Specifically, ODEC states, in total, the actual run time for the units was 822 minutes, compared to the original planned dispatch period of 900 minutes.[38]  ODEC states that its uncompensated cost for the shortened dispatch of the Marsh Run units on January 23 is $359,560.85.[39]

17.     ODEC states that, on January 27, 2014, ODEC bid the Louisa units into the PJM Day-ahead Energy Market for the January 28 operating day, but the units did not clear the market.  ODEC states that after the close of the Day-ahead Energy Market on January 27, 2014, but prior to clearing, PJM committed ODEC's Louisa units to run on January 28, from 5:30 a.m. to 10:00 a.m.  ODEC states that the cost of procuring natural gas for the dispatch pushed the costs of generation from the Louisa units greater than $1,000 per MWh.  ODEC states that PJM dispatched the units for the morning peak, but then cut the dispatch short.  ODEC states that, in total, the actual run time was 501 minutes, compared to the original planned dispatch period of 540 minutes.  ODEC states that consistent with its reimbursement methodology for costs above $1,000/MWh, PJM has already compensated ODEC for natural gas volumes burned in compliance with the Louisa dispatch instruction on January 28.  However, ODEC states that it remains uncompensated for the volumes that were not burned as a result of PJM cutting the dispatch short.  Therefore, similar to the natural gas balancing claim for Marsh Run on January 23, ODEC is seeking recovery of such costs which total $61,976.04, plus interest.[40]

## III.     **Notice of Filing and Responsive Pleadings**

18.     Notice of ODEC's petition for waiver was published in the *Federal Register*, 79 Fed. Reg. 36,800 (2014), with interventions and protests due on or before July 14, 2014.  On June 27, 2014, Monitoring Analytics, LLC, acting in its capacity as the Independent Market Monitor for PJM (PJM Market Monitor), filed a motion for an extension of time to file comments from July 14, 2014 to August 11, 2014.  On June 30, 2014, ODEC filed an answer in opposition to the PJM Market Monitor's motion.  On July 1, 2014, the PJM Market Monitor filed an answer to the answer filed by ODEC in

---

[38] *Id.* at Ex. 2, p. 25.

[39] *Id.* at 13-14.

[40] *Id.* at 14.

Filed: 04/11/2016          Document #1608250          USCA Case #16-1111

support of its own motion. An extension of time for filing comments, protests, or motions to intervene was granted to July 28, 2014.[41]

19.     A notice of intervention was filed by the Pennsylvania Public Utility Commission. Timely motions to intervene were filed by Exelon Corporation; the PJM Market Monitor; South Mississippi Electric Power Association; Electric Power Supply Association; PJM Power Providers Group; PJM Industrial Customer Coalition; Calpine Corporation; PJM; PSEG Companies;[42] Dynegy Companies;[43] Duke Energy Corporation; North Carolina Electric Membership Corporation; Dominion Resources Services, Inc.; Southern Maryland Electric Cooperative, Inc.; Retail Energy Supply Association (RESA); and Delaware Municipal Electric Corporation, Inc. An out-of-time motion to intervene and comments were filed by the Duquesne Entities[44] on August 18, 2014.

20.     Comments were filed by PJM, the PJM Industrial Customer Coalition, RESA, and the PJM Market Monitor. Answers were filed by ODEC and the PJM Market Monitor.

21.     In its comments, PJM states that it overestimated the amount of energy it would need for several days in January 2014, and for which it notified generation owners to be prepared to produce energy for PJM.[45] Additionally, PJM states that the inflexible terms and conditions of natural gas tariffs caused generators operating on 24-hour minimums to have extremely high offer prices compared to lower-cost resources that contribute to setting locational marginal prices.[46] PJM states that it is a common occurrence that PJM dispatchers indicate that units need to be available to run only to later find that, due to changes in various system conditions, PJM does not need to commit the particular unit. PJM also states that generators routinely call PJM dispatchers and ask them to prognosticate on whether units might be picked up and run in real time and, while

---

[41] *Old Dominion Electric Cooperative*, Docket No. ER14-2242-000 (July 3, 2014) (notice of extension of time).

[42] The PSEG Companies are Public Service Electric and Gas Company, PSEG Power LLC, and PSEG Energy Resources & Trade LLC.

[43] The Dynegy Companies are Dynegy Kendall Energy, LLC, Ontelaunee Power Operating Company, and Dynegy Marketing and Trade, LLC.

[44] The Duquesne Entities are Duquesne Light Company, Duquesne Light Energy, LLC, and Duquesne Power, LLC.

[45] PJM states that anticipated weather conditions and generator outages did not materialize as expected. PJM Comments at 4.

[46] *Id.* at 4.

Filed: 04/11/2016     Page 29 of 51

Document #1608250

USCA Case #16-1111

dispatchers answer those questions based on the best information they have available, they are not providing guarantees through their answers. PJM states that at times this can result in units incurring natural gas balancing losses when generation owners procure excess natural gas that they do not use to operate their units as they originally anticipated. PJM states that, while this is a normal risk that generation owners assume in conducting their business – particularly since Generation Capacity Resources such as the Louisa, Rock Springs, and Marsh Run units must be offered into PJM's markets on a daily basis and do not have an automatic right to recover all of its costs should the units not actually be dispatched – the circumstances that all PJM generators faced in January 2014 were extraordinary.[47]

22.     PJM generally supports, as a matter of policy, ODEC's request for waiver to allow recovery of ODEC's legitimate, out-of-pocket natural gas costs as deemed appropriate by the Commission.[48] PJM states that, given the operational disharmony between the natural gas and electric markets, the extraordinary circumstances in this case with respect to the extreme weather conditions, peak energy use, and abnormally high price of delivered natural gas, and because ODEC was acting in good faith in procuring the natural gas, PJM supports ODEC's recovery, under the very specific circumstances of this case, of its actual verifiable natural gas costs minus any offsetting revenues received. PJM states, however, that it lacks sufficient independent knowledge as to ODEC's actual costs, loss mitigation efforts, restrictions imposed by the natural gas pipeline, and the reasons ODEC did or did not procure natural gas at specific times on specific days.[49] PJM states that it believes ODEC met the standards for granting waiver of a tariff provision.[50]

23.     PJM states that, while its stakeholders are in the process of considering the development of an OATT or Operating Agreement provision to address whether and how to compensate generation owners under similar extraordinary conditions as occurred in January 2014, agreement on such a provision will not be straightforward or easy.[51] PJM states that it routinely adjusts generating units' scheduled operating timeframes and emphasizes that Generation Capacity Resources by definition are required to offer their resources to PJM on a day-ahead basis and the decision whether to have fuel available to operate its resources in real-time is one which rests with the generation owner.[52] PJM

[47] *Id.* at 9-10.

[48] *Id.* at 11-12.

[49] *Id.* at 11.

[50] *Id.* at 18.

[51] *Id.* at 21.

[52] *Id.* at 21-22.

Page 30 of 51

Filed: 04/11/2016

Document #1608250

USCA Case #16-1111

also states that should each case trigger compensation, the costs of such recovery could be enormous and the impacts on bidding behavior, given the risk-free nature of the commitment, largely unknown. Thus, PJM urges the Commission to move carefully should it seek to impose a sweeping directive coming out of this proceeding.[53]

24.     The PJM Market Monitor supports recovery for losses associated with operation of the Rock Springs units above the PJM offer cap of $1,000/MWh on January 23, and argues that the waiver granted in Docket No. ER14-1144-000 should be amended to include January 23, 2014, one day before the effective date previously granted.[54] However, the PJM Market Monitor does not support application of the waiver to the Marsh Run units because the offer into the Day-ahead Energy Market (i.e., $948/MWh) was below the $1,000 per MWH offer cap and therefore, was not limited by the offer cap.[55] With respect to the balance of ODEC's claims, the PJM Market Monitor does not support cost recovery for unused natural gas volumes, arguing that allowing such recovery would inappropriately shift losses to customers when Generation Capacity Resources are required to be available.[56]

25.     The PJM Market Monitor further states that ODEC's unrecovered natural gas costs related to the Rock Springs units on January 7-9 can be attributed to ODEC's own failure to operate the units consistent with PJM's dispatch instructions, and ODEC should be required to take a forced outage. With respect to the operation of the Rock Springs unit on January 28, which had a minimum run time of 24 hours, the PJM Market Monitor argues that pipeline tariff restrictions are not a valid justification for a temporary parameter exception.[57] As to the Louisa and Marsh Run facilities, the PJM Market Monitor contends that ODEC's fuel procurement decisions are its own and that ODEC should bear the associated financial consequences and not shift them to customers.[58]

---

[53] *Id.* at 22.

[54] PJM Market Monitor Comments at 5-6.

[55] *Id.* at 6-7.

[56] *Id.* at 7-9.

[57] *Id.* at 10-11.

[58] *Id.* at 11-13.

20150609-3066 FERC PDF (Unofficial) 06/09/2015

Filed: 04/11/2016     Page 31 of 51

Document #1608250

USCA Case #16-1111

26.     The PJM Market Monitor states that Generation Capacity Resources such as ODEC's units have an obligation to provide energy when they are needed.[59] Specifically, the PJM Market Monitor, citing *NEPGA v. ISO-NE*, argues that, while ODEC characterizes PJM's communications with it as "dispatch instructions," ODEC fails to recognize that, regardless of how PJM's communications are characterized, the ODEC units are Generation Capacity Resources, and, as such, are obligated to be ready to provide energy when needed. The PJM Market Monitor further states that the PJM market rules intentionally do not compensate Generation Capacity Resources for the cost of fuel that generators do not use to provide energy, as such compensation would be fundamentally inconsistent with a competitive market design. The PJM Market Monitor also states that PJM and its customers are entitled to expect that ODEC will procure fuel for its units so that they are ready to run when called and that they will be available when called. In addition, the PJM Market Monitor states that decisions about a resource's readiness are left in the hands of the owner, and the owner is entirely responsible for the attendant risks and rewards.[60]

27.     The PJM Market Monitor also contends that ODEC has not demonstrated that it meets the standards for the Commission to grant a waiver of the tariff provisions preventing the recovery of unused natural gas.[61] The PJM Market Monitor states that because ODEC's request is for a retroactive waiver, a higher level of scrutiny should apply than for a prospective waiver, and that ODEC has provided no good policy reason for such a waiver.[62] The PJM Market Monitor states that the responsibility for managing all aspects of fuel-related risk is assigned to suppliers because they are in the best position to make choices about how to manage that risk. Moreover, the PJM Market Monitor states that fuel-related risks, while they appear to be the result of short-run market conditions, are the result of long-term decisions that have been made by generation owners, including the availability of back-up fuel, the level of firmness of natural gas purchases, and whether to do a winter test of equipment. The PJM Market Monitor further states that nothing happened in January 2014 that was not foreseeable and not well within the scope of conditions that the relevant tariff provisions are designed to address. The PJM Market Monitor contends that waiving the rules for ODEC would

---

[59] *Id.* at 13 (citing *New England Power Generators Ass'n, Inc. v. ISO New England Inc.*, 144 FERC ¶ 61,157, at PP 47-59 (2013), *order on reh'g*, 145 FERC ¶ 61,206 (2013) (collectively, *NEPGA v. ISO-NE*).

[60] *Id.* at 15.

[61] The PJM Market Monitor does not oppose ODEC's request for a make-whole waiver for Rock Springs through an extension of the blanket make-whole waiver granted in Docket No. ER14-1144-000. *Id.* at 15-16.

[62] *Id.*

Page 32 of 51

Filed: 04/11/2016          Document #1608250          USCA Case #16-1111

open the floodgates for others to ask for waivers whenever the stakes are high and market decisions have negative consequences.[63]

28.     The PJM Market Monitor states that ODEC has not shown that it could not comply with the relevant tariff requirements and in fact, ODEC's behavior did comply with the provisions for the most part.  Further, the PJM Market Monitor contends that the waiver request is not of limited scope because there are many provisions which prevent or limit cost recovery in this case and granting the waiver would require broad revisions of the PJM market rules.[64]

29.     The PJM Market Monitor also contends that granting ODEC waiver of the tariff provisions relating to start-up costs (PJM Operating Agreement, Schedule 1, sections 1.9.7(b)(ii) and 1.10.2(d)) would not actually provide cost recovery because ODEC's unrecovered natural gas costs are not included as start-up costs under the market rules.[65] The PJM Market Monitor states that the costs of natural gas required to operate a unit to generate energy (as opposed to starting the unit) belong in the incremental offers and in the no-load offers and are recoverable only if a unit operates subject to specific rules. The PJM Market Monitor also argues that ODEC's request for waiver of PJM Operating Agreement, Schedule 1, section 3.2.3 is inappropriate because that section limits recovery to costs for energy actually supplied.  The PJM Market Monitor emphasizes that there is no tariff provision allowing for cost recovery related to unused fuel when no energy is generated, nor is there a provision for allocating associated costs to PJM market participants.[66]  The PJM Market Monitor states that the Commission recently rejected a waiver in similar circumstances because the requested waiver was not limited in scope.[67]

30.     The PJM Market Monitor also argues that ODEC's request does not establish a concrete problem that needs to be remedied via waiver.[68]  The PJM Market Monitor

---

[63] *Id.* at 16.

[64] *Id.* at 16-18.

[65] *Id.* at 18-19.

[66] *Id.* at 19-20.

[67] *Id.* at 20 (citing *Indicated CAISO Suppliers*, 146 FERC ¶ 61,183, at P 1 (2014) (order denying market suppliers' waiver request to reimburse generators for the cost of natural gas procured in response to CAISO dispatch directives, including "the cost of disposing of natural gas when CAISO later elects not to dispatch units for which natural gas was procured")).

[68] *Id.* at 21.

states that it makes no sense to suddenly reassign costs when they are higher than expected and that the same incentives should apply to low likelihood/high cost events as well as high likelihood/low cost events. Finally, the PJM Market Monitor argues that ODEC's waiver request cannot be granted without harm to third parties since granting the request would require customers to shoulder ODEC's unused natural gas costs. It states that the waiver is unrelated to allowing for greater accuracy of cost recovery calculations, as ODEC claims, but rather whether ODEC should be able to shift costs properly borne by ODEC to PJM customers.[69] The PJM Market Monitor states that in a recent order granting a tariff waiver, the Commission explained that it was notable that "no party asserts that undesirable consequences would result from granting this waiver."[70] The PJM Market Monitor states that granting the requested waivers here would, in contrast, upset the fundamental rules for incenting fuel procurement and fuel choice risk management in PJM markets. Finally, the PJM Market Monitor states that any recovery granted to ODEC should be separately investigated, calculated, and verified.[71]

31.     RESA states that certain generator owners, including ODEC, seek to retroactively waive the market rules that control the performance of their obligations as Generation Capacity Resources and that the waiver sought would shift costs onto other market participants.[72] RESA states that it is concerned about piecemeal application of the PJM Operating Agreement and the OATT that arises when waivers are granted. RESA states that it is important to take a holistic and comprehensive approach to determining whether and, if so, what tariff changes should be made to balance all market participant interests and that such analysis is best left for prospective stakeholder processes. RESA states that the PJM Operating Agreement and OATT do not permit a generator to recover the costs incurred in this case, and that the Commission should weigh and balance all equities and cost-shifting implications when determining whether waiver is justified.[73] RESA states that the burden arising from the imposition of additional costs on load-serving entities for past transactions, the recovery of which cannot be hedged, should be a consideration in determining whether waiver should be granted. RESA notes that the stakeholder process that is currently underway may result in changes to the PJM OATT or Operating

---

[69] Id. at 22-23.

[70] Id. at 23 (citing CAISO, 146 FERC ¶ 61,184 at P 20).

[71] Id. at 23-24.

[72] RESA Comments at 1-2.

[73] Id. at 3, 5.

Filed: 04/11/2016          Page 33 of 51

Document #1608250

USCA Case #16-1111

Filed: 04/11/2016        Page 34 of 51

Document #1608250

USCA Case #16-1111

Agreement, and that the changes would be accompanied by all procedural safeguards to ensure that market participants are aware of and are bound to follow the same rules.[74]

32.    PJM ICC states that, in exchange for the capacity payments that ODEC's units receive as Generation Capacity Resources, those units are obligated to be available to generate energy at any time during the year, and, if dispatched by PJM, will be paid the prevailing market price.[75] PJM ICC argues that, even though none of ODEC's units cleared in the Day-ahead Energy Market, ODEC still had an obligation to have its units available on those operating days, and that ODEC should have known that the PJM Operating Agreement and OATT limit cost recovery to start-up costs.[76] PJM ICC states that ODEC knew or should have known about the existence of the $1,000/MWh offer cap and argues that it is ODEC's responsibility to hedge against the risk of costs above the cap.[77] PJM ICC argues that PJM's telephone calls to ODEC were intended to ensure ODEC would be able to fulfill its obligation to be available for dispatch during the operating day and do not translate into a guarantee that ODEC's units will operate or that they will be fully reimbursed for all costs, if they are not operated.[78]

33.    PJM ICC also argues that ODEC's request for waiver should be denied because it has not demonstrated that the requested relief will not have undesirable consequences for third parties.[79] PJM ICC states that granting the request would transfer all of the costs associated with natural gas price volatility to customers who do not receive a corresponding benefit and have no say in whether or how those costs are incurred.[80] PJM ICC states that ODEC made a business decision to rely on the spot gas market and that passing those associated risks to customers without also allowing them to share in the benefits when, on many other days and during many other hours, market-clearing prices exceed ODEC's natural gas costs is unjust and unreasonable and harms third parties.[81] PJM ICC argues that, if ODEC's waiver is granted, the roughly $37.7 million in capacity

---

[74] *Id.* at 5.

[75] PJM ICC Comments at 4.

[76] *Id.* at 6-7.

[77] *Id.* at 7.

[78] *Id.* at 8.

[79] *Id.* at 8-9.

[80] *Id.* at 9.

[81] *Id.* at 10.

Page 35 of 51          Filed: 04/11/2016          Document #1608250          USCA Case #16-1111

payments it has received for the 2013/14 Delivery Year should be deducted from the amount of ODEC's cost recovery.[82] PJM ICC argues that, if the Commission determines that ODEC should be compensated for its natural gas losses, then treating the natural gas costs as start-up costs would be an appropriate starting point for cost allocation, especially for the natural gas costs associated with "canceled events" that constitute the majority of the costs ODEC seeks to recover.[83] PJM ICC states that such treatment of the natural gas costs would allow ODEC to be treated in the same manner as other generators that are committed in the Day-ahead Energy Market but are not actually brought on to operate in the Real-time market. PJM ICC states that any allocation of costs that ODEC is allowed to recover should be shared by generators that underperformed during the first half of January 2014, when, during the peak demand hour, 22 percent of generation capacity was out of service.[84]

34.    The Duquesne Entities support the comments of the PJM ICC, RESA, and the PJM Market Monitor, and state that the issues presented in this proceeding should be addressed by PJM in this docket or in a separate investigation.[85]

35.    In its first answer, filed August 12, 2014, ODEC states that the specific circumstances of this case, including ODEC following PJM's decisions as to fuel procurement, warrant granting waiver to allow ODEC to be made whole. ODEC states that those who oppose ODEC's canceled dispatch and natural gas balancing waiver requests rely on the general principle that Generation Capacity Resources in PJM have an unqualified obligation to be available and should bear both the responsibility and the risk for fuel procurement, and that the financial losses associated with such procurement should not be borne by customers.[86] ODEC argues that this approach ignores the fact-specific basis of ODEC's waiver request and glosses over compelling reasons why, in these specific circumstances, it is proper to waive the PJM OATT and Operating Agreement and allow ODEC to be made whole. ODEC acknowledges that, in exchange for capacity payments, Generation Capacity Resources are required to be available to provide energy when called upon by PJM. Nevertheless, ODEC argues that none of the tariff provisions cited by the PJM Market Monitor or PJM ICC in support of this

---

[82] *Id.* at 11-12.

[83] *Id.* at 12.

[84] *Id.* at 12-13.

[85] Duquesne Entities August 18, 2014 Filing at 3-4.

[86] ODEC August 12, 2014 Answer at 6.

Page 36 of 51

Filed: 04/11/2016

Document #1608250

USCA Case #16-1111

availability requirement prescribes the extent of the obligation to be available[87] or "prohibit[s] compensation for such 'availability.'"[88]

36.     ODEC further argues that *NEPGA v. ISO-NE*, to which the PJM Market Monitor points, is inapplicable here.[89] ODEC states that the issue in *NEPGA v. ISO-NE* was whether capacity resources in ISO-NE could take economic outages based on decisions not to procure fuel. ODEC states that in this case, however, the issue is whether ODEC should be made whole for fuel it procured at unprecedented price levels to comply with PJM commitment directions; thus, *NEPGA v. ISO-NE* is not relevant to the issue raised here.

37.     ODEC agrees that management of fuel supply risks generally is the job of the suppliers with capacity resource obligations, but asserts that, consistent with this approach, there is no requirement in the PJM OATT or Operating Agreement that Generation Capacity Resources must obtain fuel at any particular time in order to meet a dispatch instruction from PJM.[90] ODEC states that, in making fuel procurement decisions with respect to the potential dispatch of one of its units, a generator ordinarily retains flexibility, including, importantly, the option of not purchasing natural gas based on an expectation that a Day-ahead committed unit may not actually be dispatched. ODEC states that the arguments of the PJM Market Monitor and PJM ICC fail to recognize that PJM's interactions with ODEC served effectively to supersede the options that ODEC may have had to avoid or minimize its exposure to natural gas cost risk.[91]

38.     ODEC also states that the PJM Market Monitor and PJM ICC ignore or dismiss PJM's assurances that ODEC's units would be dispatched and/or that ODEC would be made whole for the natural gas costs that it would incur.[92] ODEC states that, leaving aside the legal question of whether the assurances provided by its employees could bind PJM or otherwise result in an outcome not specifically contemplated by the PJM Operating Agreement or OATT, the record shows that ODEC relied on PJM's assurances

---

[87] *Id.* at 8.

[88] *Id.* at 9.

[89] *Id.* at 8.

[90] *Id.* at 11.

[91] *Id.* at 11.

[92] *Id.* at 12.

Filed: 04/11/2016    Page 37 of 51

Document #1608250

USCA Case #16-1111

in taking actions that resulted in the natural gas costs at issue and such reliance should be a factor in support of granting ODEC's requested waiver.[93]

39.     ODEC states that, contrary to the PJM Market Monitor's arguments, its request satisfies the Commission's criteria for a waiver. ODEC states that the *CAISO* case granting a prospective tariff waiver, as well as the Commission's previous waiver of the $1,000/MWh offer cap in PJM, are precedent for the waiver here. ODEC states that the common theme in these orders is that the imposition of higher costs on load is not evidence of sufficient "harm to third parties" to deny waiver, as long as the increased costs reflect the costs associated with providing service to customers.[94] Further, ODEC states that the undesirable consequences to the PJM market and to consumers resulting from not granting a waiver are potentially more significant than allowing ODEC's cost recovery here. Contrary to the PJM Market Monitor's assertions, ODEC states that it is not seeking any revisions to or expansion of PJM's OATT or Operating Agreement as part of its waiver request; rather, it is requesting a one-time, fact-specific waiver of certain identified tariff provisions to allow for recovery of costs based on specific facts and circumstances.[95]

40.     ODEC also argues that PJM ICC's proposal to offset recovery against capacity payments must be rejected and that the Commission can resolve ODEC's waiver request without further process.[96]

41.     In its answer, filed September 8, 2014, the PJM Market Monitor states that all parties agree that the PJM current market rules do not permit cost recovery in this case. The PJM Market Monitor states that PJM's Operating Agreement and OATT do not recognize any "allocation" of fuel costs, particularly when that fuel is not used for electric service. The PJM Market Monitor states that market participants are responsible for managing their own risks.[97] The PJM Market Monitor states that "if . . . a capacity resource may consider the economics of fuel procurement when determining whether to provide energy when it is needed, then reliability will be degraded and consumers will be

---

[93] *Id.* at 13.

[94] *Id.* at 20 (citing *PJM Interconnection, L.L.C.*, 146 FERC ¶ 61,078, at P 41 (2014)).

[95] *Id.* at 21.

[96] *Id.* at 24-26.

[97] PJM Market Monitor September 8, 2014 Answer at 1-2.

Filed: 04/11/2016        Page 38 of 51

Document #1608250

USCA Case #16-1111

assigned risks that they cannot manage."[98]  The PJM Market Monitor acknowledges that the current incentives are not adequate, but believes the solution is to strengthen performance incentives and not to make after-market payments for the purpose of assuring participants that they may receive such payments in the future.[99]

42.     In its second answer, filed September 15, 2014, ODEC again takes issue with the PJM Market Monitor's application of the Commission's waiver policy; argues that its specific circumstances justify a grant of waiver; argues that generators should have an opportunity to recover costs associated with responding to RTO instructions; and states that denial of the waiver request could increase the likelihood that suppliers will err on the side of not cooperating with PJM dispatchers when allowed flexibility.[100]  ODEC reiterates that *NEPGA v. ISO-NE* is inapposite in this case since it related to specific provisions of the ISO New England tariff and the facts of that case were "essentially the opposite" of those in this case.[101]

## IV.    Discussion

### A.    Procedural Matters

43.     Pursuant to Rule 214 of the Commission's Rules of Practice and Procedure,[102] the notice of intervention and timely, unopposed motions to intervene serve to make the entities that filed them parties to this proceeding.  Pursuant to Rule 214(d) of the Commission's Rules of Practice and Procedure,[103] the Commission will grant the Duquesne Entities' late-filed motion to intervene given their interest in the proceeding, the early stage of the proceeding, and the absence of undue prejudice or delay.

44.     Rule 213(a)(2) of the Commission's Rules of Practice and Procedure prohibits an answer to a protest or answer unless otherwise ordered by the decisional authority.[104]  We

---

[98] *Id.* at 4-5 (citing *NEPGA v. ISO-NE*, 144 FERC ¶ 61,157, at PP 47-59 (2013), *order on reh'g*, 145 FERC ¶ 61,206).

[99] PJM Market Monitor September 8, 2014 Answer at 4.

[100] ODEC September 15, 2014 Filing at 2-4.

[101] *Id.* at 4.

[102] 18 C.F.R. § 385.214 (2014).

[103] *Id.*

[104] 18 C.F.R. § 385.213(a)(2) (2014).

Page 39 of 51

Filed: 04/11/2016

Document #1608250

USCA Case #16-1111

will accept ODEC's and the PJM Market Monitor's answers because they have provided information that assisted us in our decision-making process.

### B.    Substantive Matters

45.    As discussed below, the Commission denies ODEC's request for waiver.  The Commission finds that the filed rate doctrine and the rule against retroactive ratemaking preclude granting ODEC's waiver request.

46.    ODEC seeks a retroactive waiver so that it may recover natural gas-related costs totaling $14,925,669.58 incurred prior to the date on which it made its waiver filing.  ODEC does not dispute that such natural gas cost recovery is not currently allowed by the PJM OATT or Operating Agreement.  However, the filed rate doctrine "forbids a regulated entity to charge rates for its services other than those properly filed with the appropriate federal regulatory authority."[105]  The related rule against retroactive ratemaking also "prohibits the Commission from adjusting current rates to make up for a utility's over- or under-collection in prior periods."[106]  When evaluating whether granting the requested relief would violate either the filed rate doctrine or the rule against retroactive ratemaking, the Commission considers whether the ratepayers had sufficient notice that the approved rate was subject to change.[107]

47.    We find that the relief sought by ODEC is prohibited by the filed rate doctrine and rule against retroactive ratemaking.  In this case, ratepayers had not received any prior notice of ODEC's requested relief, which was sought roughly five months after the events in question.  Although ODEC, relying on *CAISO*, states that no legally cognizable harm would result from granting waiver in this case, the waiver in *CAISO* was effective prospectively from the date of that order for costs to be incurred in the future, so adequate

---

[105] *Ark. La. Gas Co. v. Hall*, 453 U.S. 571, 577 (1981).

[106] *Towns of Concord v. FERC*, 955 F.2d 67, 71 & n.2 (D.C. Cir. 1992).

[107] *See Pub. Utils. Comm'n of Cal. v. FERC*, 988 F.2d 154, 164 (D.C. Cir. 1993); *see also PJM Interconnection, L.L.C.*, 146 FERC ¶ 61,078, at P 46 (2014) ("The waiver is effective prospectively, as of the date of this order, and therefore does not retroactively change the rules . . . .  Further, the instant filing put market participants on notice regarding a possible rule change."); *Columbia Gas Transmission Corp. v. FERC*, 895 F.2d 791, 794-97 (D.C. Cir. 1990) (applying same concepts in waiver context); *Consolidated Edison Co. of N.Y. v. FERC*, 347 F.3d 964, 968-70 (D.C. Cir. 2003) (applying same concepts in waiver context).

Filed: 04/11/2016        Page 40 of 51

Document #1608250

USCA Case #16-1111

notice had been provided.[108] Moreover, we find that cognizable harm would result as PJM stakeholders would be assessed additional charges for which they were not given notice.

48.      Although the PJM Market Monitor supports ODEC's recovery for losses associated with operation of the Rock Springs units above the PJM $1,000/MWh offer cap on January 23 by making the Commission's order granting waiver in Docket No. ER14-1144 effective retroactively (i.e., January 23 instead of January 24), it does not support granting recovery for canceled dispatch and natural gas balancing costs. However, we do not find a legally cognizable difference between the two requests, as in each instance, cost recovery is not currently allowed by the PJM OATT or Operating Agreement, and sufficient notice has not been provided ratepayers.[109] Accordingly, we deny ODEC's request for waiver. In light of our decision to deny waiver as impermissible retroactive relief, we need not reach any of ODEC's equitable arguments for granting waiver.

49.      We note that in a contemporaneous order issued in Docket Nos. EL14-45-000, in which a similar request for tariff waiver related to unrecovered natural gas costs incurred in January 2014, and EL15-73-000, the Commission instituted a section 206 proceeding finding that PJM's OATT and Operating Agreement may be unjust, unreasonable, unduly discriminatory or preferential.[110]

---

[108] *CAISO*, 146 FERC ¶ 61,184 at PP 18-19.

[109] *See PJM Interconnection, L.L.C.*, 149 FERC ¶ 61,059 (2014).

[110] *Duke Energy Corporation, Duke Energy Commercial Asset Management, Inc., and Duke Energy Lee II, LLC v. PJM Interconnection, L.L.C., and PJM Settlement, Inc. and PJM Interconnection, L.L.C.*, 151 FERC ¶ 61,206 (2015).

The Commission orders:

ODEC's request for waiver is hereby denied, as discussed in the body of this order.

By the Commission.  Commissioner Moeller is dissenting with a separate statement
attached.

( S E A L )

Nathaniel J. Davis, Sr.,
Deputy Secretary.

Page 41 of 51          Filed: 04/11/2016          Document #1608250          USCA Case #16-1111

Page 42 of 51

Filed: 04/11/2016

Document #1608250

USCA Case #16-1111

UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Old Dominion Electric Cooperative                    Docket No.  ER14-2242-000

(Issued June 9, 2015)

MOELLER, Commissioner, *dissenting*:

I am troubled that, notwithstanding its recognition that PJM's existing tariff may be unjust and unreasonable, the majority is unwilling to provide any corresponding relief to ODEC.  PJM is the only regional transmission organization that does not allow market participants to submit day-ahead offers that vary by hour or to update their offers in real time, including in emergency situations.  This inflexibility contributed to the inability of generation units, like those of ODEC, to recover legitimate fuel costs incurred during the polar vortex of January 2014.  The impact of denying any compensation to ODEC will fall particularly hard on its ratepayers, as it is a not-for-profit cooperative utility.  PJM also recognizes the need to provide cost recovery and supports granting the waiver requests in the extraordinary circumstances presented by this case.  At the very least, this matter should have been set for hearing and settlement judge procedures to consider potential avenues for providing appropriate compensation to ODEC and to enable the relevant parties to explore a settlement that could have amicably resolved this dispute.

ODEC acted in good faith to preserve system reliability during a time of extraordinary system stress and deserve appropriate compensation.  ODEC seeks to recover costs incurred to secure natural gas to ensure availability during the cold weather events of 2014 after being assured by PJM that the costs were recoverable.  The majority supports placing ODEC in a no-win situation where it acquired natural gas consistent with PJM's instructions, but was unable to recover the associated costs when those costs exceeded PJM's offer cap or when PJM chose not to dispatch its units.[1]

In finding that third parties would be harmed by granting waiver, the majority fails to apply consistently the Commission's standard test for considering tariff waiver requests and, thus, largely ignores ODEC's arguments as to why this test has been satisfied.  The majority should have applied the Commission's waiver standards, which would have enabled consideration of the potential harm to third parties due to the costs of appropriately compensating ODEC against the reliability benefits received when

---

[1] *Montaup Elec. Co. and Pub. Serv. Co. of N.H.*, 46 FERC ¶ 63,007 (1989) ("it would be just as imprudent or unreasonable for this Commission to place utilities in a no-win situation").

Filed: 04/11/2016     Page 43 of 51

Document #1608250

USCA Case #16-1111

generators are available to provide service during periods of system stress. For instance, when applying its waiver standards to approve a tariff waiver to ensure appropriate compensation to generators in NYISO during the polar vortex of 2014, the Commission found that "although granting waiver may result in increased costs to load and increase cost to certain market participants…it is appropriate to allow generators to recover such costs in this exigent circumstance."[2] The same reasoning and exigent circumstances that justified allocating costs to third parties in that proceeding are also present here.

Instead of applying the Commission's standards for considering tariff waivers, the majority applies an overly-narrow reading of the prior notice rule and prohibition against retroactive ratemaking to find that ratepayers somehow lacked adequate notice that they would, in fact, be responsible for paying the cost of services provided to them to ensure resource availability during system emergencies. The Commission can waive – and has waived – the prior notice requirement to ensure that resources are compensated for providing a reliability service. For instance, the Commission rightly waived the prior notice rule to grant a retroactive effective date to ensure compensation of the provision of reliability must-run service by the City of Escanaba, Michigan, prior to the execution and filing of the underlying agreement based on the finding that resources acting to preserve system reliability must be compensated.[3] However, the Commission granted waiver notwithstanding the fact that: (1) the tariff provisions on file describing the applicable rate could apply only upon the execution of the agreement,[4] (2) those provisions were not sufficiently detailed to constitute a filed rate mechanism that could provide ratepayer notice,[5] and (3) ratepayers lacked notice that they were, in fact, receiving service.[6]

---

[2] *New York Indep. Sys. Operator, Inc.*, 146 FERC ¶ 61,061, at P 20 (2014) (*NYISO*).

[3] *Midwest Indep. Transmission Sys. Operator, Inc.*, 142 FERC ¶ 61,170, at PP 84, 85 (2013) (*MISO*).

[4] In *MISO*, the Commission stated that MISO's tariff provided that a resource would qualify as a System Support Resource (SSR), and thus be eligible for associated compensation, *during the period* that that the resource is subject to an *executed* SSR agreement. However, the Commission waived the prior notice rule to grant an effective date of June 15, 2012, which was prior to the September 5, 2012 execution date of the SSR agreement. *Midwest Indep. Transmission Sys. Operator, Inc.*, 142 FERC ¶ 61,170, at PP 76, 85 (2013) (*MISO*).

[5] The Commission previously found that MISO's tariff provisions describing the rate of SSR service lacked sufficient detail to constitute a filed rate mechanism, which led to the Commission's determination that separate agreements and associated rate

Page 44 of 51

Filed: 04/11/2016

Document #1608250

USCA Case #16-1111

Nonetheless, I fully support the Commission's action to remedy any defects in PJM's current market construct that do not provide adequate supply offer flexibility, in order to prevent the circumstances faced by ODEC from recurring. As the Commission previously recognized during the polar vortex of 2014, requiring generators "to provide service to support reliability but without being able to recoup the incremental operating costs that they incur…would discourage generators from offering service at a time when they are needed."[7] It is similarly imperative that generators in PJM are able to recover legitimate, actual fuel costs incurred to ensure that they can provide service during emergency conditions. I encourage PJM to implement any necessary tariff changes as quickly as possible.

Accordingly, I respectfully dissent.

_____
Philip D. Moeller
Commissioner

---

schedules must be filed to provide the rates associated with SSR service. *Midwest Indep. Transmission Sys. Operator, Inc.*, 140 FERC ¶ 61,237, at P 372 ("We accept [MISO]'s negotiated approach to determining SSR costs. Accordingly, because the tariff contains no rate mechanism, we will require [MISO] to file under section 205 of the FPA for cost recovery at the time it seeks to charge customers for SSR costs."), *reh'g denied*, 109 FERC ¶ 61,157 (2004). However, in *MISO*, the Commission waived the prior notice rule to grant an effective date of June 15, 2012, which was prior to the October 5, 2012 filing date of the proposed SSR agreement and associated rate schedule. *MISO*, 142 FERC ¶ 61,170, at PP 1, 85.

[6] The MISO tariff's confidentiality provisions prevented the disclosure of the fact that an SSR had been designated and commenced providing service on June 15, 2012. *MISO*, 142 FERC ¶ 61,170 at P 44. Thus, ratepayers were likely unaware that they were even receiving a service until the agreement and rate schedule associated with the provision of that service were filed with the Commission on October 5, 2012.

[7] *NYISO*, 146 FERC ¶ 61,061, at P 20 (2014).

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

Old Dominion Electric Cooperative      )

     v.                           )      No. _____

Federal Energy Regulatory Commission      )

## CORPORATE DISCLOSURE STATEMENT OF
## OLD DOMINION ELECTRIC COOPERATIVE

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Circuit Rule 26.1, Old Dominion Electric Cooperative ("ODEC") states as follows:

1.      ODEC is a not-for profit power supply electric cooperative to which Rule 26.1 does not apply. *See* Fed. R. App. P.26.1(a).

Respectfully submitted,

*[signature]*

Adrienne E. Clair
Dennis Lane
Stinson Leonard Street LLP
1775 Pennsylvania Avenue, NW, Suite 800
Washington, D.C. 20006
(202) 785-9100
(202) 785-9163 (fax)
adrienne.clair@stinson.com
dennis.lane@stinson.com

*Counsel for Old Dominion Electric Cooperative*

April 11, 2016

# CERTIFICATE OF SERVICE

In accordance with Fed. R. App. P. 25(d), I hereby certify that I have this 11th day of April, 2016, caused to be served copies of the foregoing Petition for Review and Corporate Disclosure Statement upon the Solicitor of the Federal Energy Regulatory Commission by first class mail, postage prepaid, and electronically to all persons listed on the attached service list, which was compiled by the Federal Energy Regulatory Commission.

Robert H. Solomon
Solicitor
Federal Energy Regulatory Commission
888 First Street, N.E.
Washington, D.C. 20426

Adrienne E. Clair

**FERC** Online - Web Applications of the Federal Energy Regulatory Commission


www.ferc.gov

| FERC Online Home | Service List for ER14-2242-000 Old Dominion Electric Cooperative | |
| --- | --- | --- |
| About FERC Online | Contacts marked ** must be postal served | |

| | Party | Primary Person or Counsel of Record to be Served | Other Contact to be Served |
| --- | --- | --- | --- |
| Log Out | Delaware Municipal Electric Corporation, Inc. | Thomas Rudebusch Partner Duncan, Weinberg, Genzer & Pembroke PC 1615 M Street, NW Suite 800 Washington, DISTRICT OF COLUMBIA 20036 UNITED STATES tlr@dwgp.com | Patrick E McCullar President and CEO pmccullar@demecinc.net |
| Edit Registration Company Registration eFiling | Delaware Municipal Electric Corporation, Inc. | Linda Murray-Kimball Secretary Duncan, Weinberg, Genzer & Pembroke PC 1615 M Street, NW Suite 800 Washington, DISTRICT OF COLUMBIA 20036 UNITED STATES lmk@dwgp.com | |
| eSubscription eComment Query Mailing List/Recipients by State Query Service List My Service List | Dominion Resources Services, Inc. | Michael Regulinski Assistant General Counsel Dominion Services Legal Group 120 Tredegar Street RS-2 Richmond, VIRGINIA 23231-9 UNITED STATES Michael.Regulinski@Dom.com | Catharine Lacy catharine.m.lacy@dom.com |
| eLibrary eTariff Viewer Help | Dominion Resources Services, Inc. | | Wesley Walker Dominion Companies PO Box 25615 Richmond, 23260-5615 wesley.walker@dom.com |
| | Duke Energy Corporation | Sheri May Staff Counsel INDIVIDUAL 139 East Fourth St. Cincinnati, OHIO 45202 UNITED STATES sheri.may@duke-energy.com | |
| | Duquesne Light Company | Krysia Kubiak Assistant General Counsel Duquesne Light Company 411 7th Ave. Pittsburgh, PENNSYLVANIA 15217 UNITED STATES kkubiak@duqlight.com | Meg Sullivan Duquesne Light Company 2839 New Beaver Ave. N2-SO Building 2 Pittsburgh, PENNSYLVANIA 15233 mesullivan@duqlight.com |
| | Dynegy Marketing and Trade, LLC, et al | Michelle Grant Corporate Counsel INDIVIDUAL 601 Travis Street Suite 1400 Houston, TEXAS 77002 UNITED STATES michelle.d.grant@dynegy.com | Jason Cox Director, Regulatory Affairs Dynegy Power Marketing, Inc. 1000 Louisiana Ave Suite 5800 Houston, TEXAS 77002 jason.cox@dynegy.com |

| | | |
|---|---|---|
| Electric Power Supply Association | Nancy Bagot<br>Vice President<br>Electric Power Supply Association<br>1401 New York Ave. NW<br>11th FLoor<br>Washington, DISTRICT OF COLUMBIA 20005<br>UNITED STATES<br>NancyB@epsa.org | |
| Exelon Corporation | Christopher Wilson<br>Director, Federal Regulatory A<br>Exelon Corporation<br>101 Constitution Ave, NW<br>Suite 400E<br>Washington, DISTRICT OF COLUMBIA 20001<br>UNITED STATES<br>FERCe-filings@exeloncorp.com | Colleen C Farrell<br>Exelon Corporation<br>101 Constitution Ave NW<br>Washington, DISTRICT OF COLUMBIA 20001<br>colleen.farrell@exeloncorp.com |
| Exelon Corporation | | Jason C Barker, ESQ<br>Vice President, Energy Policy<br>Constellation Energy Group Inc.<br>111 Market Place<br>Suite 500<br>Baltimore, MARYLAND 21202<br>jason.barker@constellation.com |
| Exelon Corporation | | Divesh Gupta<br>COUNSEL<br>Constellation Energy Group, Inc.<br>100 Constellation Way<br>Suite 500C<br>Baltimore, MARYLAND 21202<br>divesh.gupta@constellation.com |
| Monitoring Analytics, LLC | Jeffrey Mayes<br>General Counsel<br>Monitoring Analytics, LLC<br>2621 Van Buren Avenue, Suite 160<br>Valley Forge Corporate Center<br>Eagleville, PENNSYLVANIA 19403<br>UNITED STATES<br>jeffrey.mayes@monitoringanalytics.com | Joseph Bowring<br>Monitoring Analytics, LLC<br>2621 Van Buren Avenue, Suite 160<br>Norristown, PENNSYLVANIA 19403<br>Joseph.Bowring@monitoringanalytics.com |
| Monitoring Analytics, LLC | | Suzette N Krausen<br>Executive Assistant<br>Monitoring Analytics, LLC<br>2621 Van Buren Ave Ste 160<br>Norristown, PENNSYLVANIA 19403<br>Suzette.Krausen@monitoringanalytics.com |
| North Carolina Electric Membership Corporation | Richard Feathers<br>Associate General Counsel<br>North Carolina Electric Membership Corporation<br>PO Box 27306<br>Raleigh,NORTH CAROLINA 27611-7306<br>UNITED STATES<br>rick.feathers@ncemcs.com | Brenda Lynam<br>Legal<br>North Carolina Electric Membership Corporation<br>PO Box 27306<br>Raleigh,NORTH CAROLINA 27611-7306<br>brenda.lynam@ncemcs.com |
| North Carolina Electric Membership Corporation | Charles Bayless<br>Associate General Counsel<br>North Carolina Electric Membership Corporation<br>3400 Sumner Boulevard<br>Raleigh, NORTH CAROLINA 27616<br>UNITED STATES<br>charlie.bayless@ncemcs.com | |
| North Carolina Electric Membership Corporation | Sean Beeny<br>Attorney<br>INDIVIDUAL<br>1015 15th St, NW | |

| | | |
|---|---|---|
| | Twelfth Floor<br>Washington, DISTRICT OF COLUMBIA 20005<br>UNITED STATES<br>sbeeny@mccarter.com | |
| North Carolina Electric Membership Corporation | Denise Goulet<br>Counsel<br>McCarter & English, LLP<br>1015 Fifthteenth Street, N.W.<br>Suite 1200<br>Washington, DISTRICT OF COLUMBIA 20005<br>UNITED STATES<br>dgoulet@mccarter.com | |
| Old Dominion Electric Cooperative | Adrienne Clair<br>Stinson Leonard Street LLP<br>Stinson Leonard Street LLP<br>1775 Pennsylvania Ave, NW<br>Suite 800<br>Washington, DISTRICT OF COLUMBIA 20006<br>UNITED STATES<br>adrienne.clair@stinsonleonard.com | John E McCaffrey<br>Stinson Leonard Street LLP<br>1775 Pennsylvania Avenue, NW<br>Ste. 800<br>Washington, DISTRICT OF COLUMBIA 20006<br>john.mccaffrey@stinson.com |
| Pennsylvania Public Utility Commission | James Melia<br>Assistant Counsel<br>Pennsylvania Public Utility Commission<br>PO Box 3265<br>Harrisburg,PENNSYLVANIA 17105-3265<br>UNITED STATES<br>jmelia@pa.gov | Aspassia Staevska<br>Assistant Counsel<br>Pennsylvania Public Utility Commission<br>400 North Street<br>Harrisburg, PENNSYLVANIA 17120<br>astaevska@pa.gov |
| PJM Industrial Customer Coalition | Robert Weishaar<br>McNees Wallace & Nurick LLC<br>777 North Capitol St, NE, Suite 401<br>Washington, DISTRICT OF COLUMBIA 20002<br>UNITED STATES<br>rweishaa@mwn.com | Elizabeth P. Trinkle<br>Attorney<br>McNees Wallace & Nurick LLC<br>100 Pine Street<br>Harrisburg, PENNSYLVANIA 17101<br>etrinkle@mwn.com |
| PJM Industrial Customer Coalition | | Susan E Bruce<br>McNees Wallace & Nurick LLC<br>100 Pine St<br>Harrisburg, PENNSYLVANIA 17101<br>sbruce@mwn.com |
| PJM Industrial Customer Coalition | | Lauren Huff<br>Paralegal<br>McNees Wallace & Nurick LLC<br>100 Pine Street<br>P.O. Box 1166<br>Harrisburg, PENNSYLVANIA 17108<br>lhuff@mwn.com |
| PJM Industrial Customer Coalition | | David S. Mabry<br>McNees Wallace & Nurick LLC<br>100 Pine Street<br>Harrisburg, PENNSYLVANIA 17101<br>dmabry@mwn.com |
| PJM Interconnection, L.L.C. | Jacqulynn Hugee<br>Senior Counsel<br>PJM Interconnection, L.L.C.<br>2750 Monroe Blvd.<br>Audubon, PENNSYLVANIA 19403<br>UNITED STATES<br>Jacqulynn.Hugee@pjm.com | |
| PJM Interconnection, L.L.C. | Steven Shparber<br>steven.shparber@pjm.com | |
| | CRAIG GLAZER<br>V.P., Federal Gov't Policy | |

Filed: 04/11/2016          Page 50 of 51

Document #1608250

USCA Case #16-1111

| | | |
|---|---|---|
| PJM Interconnection, L.L.C. | PJM Interconnection, L.L.C.<br>1200 G Street, N.W.<br>Suite 600<br>Washington, DISTRICT OF COLUMBIA<br>20005<br>UNITED STATES<br>CRAIG.GLAZER@PJM.COM | |
| PJM Power Providers Group | Glen Thomas<br>1060 First Avenue<br>Suite 400<br>King of Prussia, PENNSYLVANIA 19406<br>UNITED STATES<br>gthomas@gtpowergroup.com | Diane Slifer<br>slifer@viauna.com |
| PJM Power Providers Group | | Laura Chappelle<br>4218 Jacob Meadows<br>Okemos, MICHIGAN 48864<br>laurac@chappelleconsulting.net |
| PSEG Energy Resources & Trade LLC | Cara Lewis<br>Assistant Regulatory Counsel<br>80 Park Plaza, T5<br>Newark, NEW JERSEY 07102<br>UNITED STATES<br>cara.lewis@pseg.com | Jodi Moskowitz<br>Gen. Reg. Counsel<br>PSEG Services Corporation<br>80 Park Plz # T5G<br>Newark, NEW JERSEY 07102<br>Jodi.Moskowitz@PSEG.com |
| PSEG Energy Resources & Trade LLC | | Kenneth R. Carretta, ESQ<br>Deputy General Counsel/Chief<br>PSEG Energy Resources & Trade LLC<br>80 Park Plaza, T5G<br>Newark, NEW JERSEY 07102<br>kenneth.carretta@pseg.com |
| PSEG Power LLC | Cara Lewis<br>Assistant Regulatory Counsel<br>80 Park Plaza, T5<br>Newark, NEW JERSEY 07102<br>UNITED STATES<br>cara.lewis@pseg.com | Jodi Moskowitz<br>Gen. Reg. Counsel<br>PSEG Services Corporation<br>80 Park Plz # T5G<br>Newark, NEW JERSEY 07102<br>Jodi.Moskowitz@PSEG.com |
| Public Service Electric and Gas Company | Cara Lewis<br>Assistant Regulatory Counsel<br>80 Park Plaza, T5<br>Newark, NEW JERSEY 07102<br>UNITED STATES<br>cara.lewis@pseg.com | Jodi Moskowitz<br>Gen. Reg. Counsel<br>PSEG Services Corporation<br>80 Park Plz # T5G<br>Newark, NEW JERSEY 07102<br>Jodi.Moskowitz@PSEG.com |
| Retail Energy Supply Association | Elizabeth Whittle<br>Partner<br>Nixon Peabody LLP<br>401 Ninth Street, N.W<br>Suite 900<br>Washington, DISTRICT OF COLUMBIA<br>20004<br>UNITED STATES<br>ewhittle@nixonpeabody.com | |
| South Mississippi Electric Power Association | Robert Weinberg<br>Attorney<br>Duncan, Weinberg, Genzer & Pembroke PC<br>1615 M St., N.W.<br>Suite 800<br>Washington, DISTRICT OF COLUMBIA<br>20036<br>UNITED STATES<br>rw@dwgp.com | Linda L. Murray-Kimball<br>Secretary<br>Duncan, Weinberg, Genzer & Pembroke PC<br>1615 M Street, NW<br>Suite 800<br>Washington, DISTRICT OF COLUMBIA<br>20036<br>lmk@dwgp.com |
| South Mississippi Electric Power Association | Matthew Rudolphi<br>Attorney<br>Duncan, Weinberg, Genzer & Pembroke PC<br>1615 M Street, NW, Suite 800<br>Washington, DISTRICT OF COLUMBIA | Nathan Brown<br>7037 Highway 49<br>PO Box 15849<br>Hattiesburg, MISSISSIPPI 39404-5849<br>nbrown@smepa.coop |

| | | |
|---|---|---|
| | 22314<br>UNITED STATES<br>mrr@dwgp.com | |
| South Mississippi Electric Power Association | | Nathan T Bellville<br>Regulatory Affairs Specialist<br>South Mississippi Electric Power Association<br>P.O. Box 15849<br>Hattiesburg, MISSISSIPPI 39404-5849<br>nbellville@smepa.coop |
| Southern Maryland Electric Cooperative, Inc. | Robert Weinberg<br>Attorney<br>Duncan, Weinberg, Genzer & Pembroke PC<br>1615 M St., N.W.<br>Suite 800<br>Washington, DISTRICT OF COLUMBIA 20036<br>UNITED STATES<br>rw@dwgp.com | Linda L. Murray-Kimball<br>Secretary<br>Duncan, Weinberg, Genzer & Pembroke PC<br>1615 M Street, NW<br>Suite 800<br>Washington, DISTRICT OF COLUMBIA 20036<br>lmk@dwgp.com |
| Southern Maryland Electric Cooperative, Inc. | Jason Gray<br>Associate<br>Duncan, Weinberg, Genzer & Pembroke PC<br>1615 M Street, N.W.<br>Suite 800<br>Washington, DISTRICT OF COLUMBIA 20036<br>UNITED STATES<br>jtg@dwgp.com | Mark A. MacDougall<br>V.P., Legal, Regulatory & Gen.<br>PO Box 1937<br>Hughesville, DISTRICT OF COLUMBIA 20637-1937<br>Mark.MacDougall@smeco.coop |
| Southern Maryland Electric Cooperative, Inc. | | Kenneth M Capps<br>V.P., Engineering & Operations<br>PO Box 1937<br>Hughesville, 20637-1937<br>Charles<br>Ken.Capps@smeco.coop |

Back to Query Service List        Back to FERCOnline

For any issues regarding FERC Online, please contact FERC Online Support or call Local: 202-502-6652 | Toll-free: 866-208-3676.
Please include a current mail address, telephone number, and e-mail address.